## JACOB HOOVER *v.* D. F. MILLER.

A contract for the purchase of real estate cannot be proved by parol. C. C. 2255. But where a party interrogated upon oath confesses the contract, that confession forms the written evidence of the title.

A party interrogated on oath must simply confess or deny the fact about which he is interrogated; but he may also state other facts tending to his defence, provided they be closely linked to the fact on which he has been questioned. If he admits the existence of an agreement, which he says was afterwards broken by the other party, the latter will not be considered as closely linked with the admission, but merely the affiant's opinion upon what may be a question of law. C. P. 353.

In doubtful cases the agreement is to be interpreted against him who has contracted the obligation; and where one of the parties has had an opportunity of giving the necessary explanation and has not done so, the inference is that the explanation would have been disadvantageous to him if made. C. C. 1952, 1953.

If a party interrogated on oath answers evasively, the interrogatories may be taken as confessed against him, even without an application from the other party.

APPEAL from the District Court of Concordia, *Farrar*, J. *H. B. Shaw*, for plaintiff. *Stacey* and *Sparrow*, for defendant. The judgment of the court was pronounced by

ROST, J. The plaintiff seeks to recover a tract of land in the possession of the defendant, which he purchased at the probate sale of the succession of the late *John P. McNeill*. He also claims damages. The answer is, that *McNeill* died in Mississippi in 1837, leaving *Alvarez Fisk* his testamentary executor; that shortly after, the respondent entered into a written agreement with *Fisk* for the purchase of the land, and, under said agreement, took actual possession of it, and has remained in possession up to the present time ; that in 1848, a dative testamentary executor was appointed in this State, who caused the land to be advertised for sale at public auction, under an order of court; that the land being situated between the plantations of the plaintiff and of the respondent, they entered into a verbal agreement for the purchase of it on joint account, each to take the half adjoining his own land, and the division line to be drawn according to one of two plans, sketches of which were in the hands of the legal adviser of the plantiff, the said plaintiff having the choice; that the land was adjudicated to the plaintiff under this agreement, and that he now refuses to comply with it. The defendant further avers, that he has made a tender of half of the price ; and he prays, that upon complying with the terms of the sale, he may be decreed to be the owner of the upper half of the land in controversy.

For the purpose of proving the alleged agreement, the defendant propounded the following interrogatory to the plaintiff: Did you, or not, previous to the probate sale of the land described in your petition, agree with *Mr. D. F. Miller*, the defendant, to buy the same in partnership, to be divided in one of two ways as shown in a sketch drawn by *Mr. Miller*, by which the land was cut into equal moieties, the upper half to belong to *Mr. Miller*, and the lower half to you?

The answer of the plaintiff was, that they had made a partial private agreement to that effect, and that afterwards said agreement was broken.

The case was tried before a jury, who found in favor of the plaintiff, with $300 damages. The defendant has appealed from the judgment rendered on the verdict.

HOOVER
*v.*
MILLER.

In the course of the trial, the defendant's counsel excepted to the opinion of the court rejecting the evidence of witnesses offered by him, to prove that when the land was about to be sold a verbal agreement was entered into, in their presence between the plaintiff and the defendant, to the effect that the land was to be purchased by the plaintiff for the joint benefit of himself and the defendant, each paying one half of the price; and further, that after the adjudication the plaintiff had repeatedly acknowledged the defendant to be the owner of one half of the land. We are of opinion that the district judge did not err. We express no opinion upon the question, whether parol evidence would have been admissible if the object of it had been to explain the ambiguity in the answer of the plaintiff to the interrogatory put to him. It is enough to say, that the evidence was offered without reference to that answer, and that it was a distinct attempt to prove by parol a contract for the purchase of real estate, in direct violation of art. 2415 of the code. The case stands before us as it did before the district court on the interrogatory of the plaintiff, and the answer of the defendant to it. Article 2255 of the code provides, that every transfer of immovable property or slaves must be in writing; but if a verbal sale or other disposition of such property be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property or slaves thus sold.

Under that article, when the party interrogated admits the contract, the interrogatory and answer become the written evidence of title. The defendant in this case did not object to the sufficiency of the answer, and did not require the plaintiff to answer over. The only thing to be ascertained therefore is, whether the interrogatory and answer, as they stand, are sufficiently definite and certain to prove a contract, and establish the title of the defendant.

The rule in answering interrogatories is, that the party interrogated must simply confess or deny the fact; but that he may state some other facts tending to his defence, provided they be closely linked to the fact on which he has been questioned. C. P. 353. The last part of the answer in this case, that the agreement was afterwards broken, so far from stating a fact closely linked to the question asked, is not a fact at all within the meaning of the Code of Practice. It is nothing more than the plaintiff's opinion on a question of law, admitting the existence of the contract before it was broken. If the breach originated in the act or omission of the defendant, the plaintiff should have shown that act or omission. If the breach occurred through the fault of the plaintiff, the defendant does not elect to consider the contract as broken, and has a right to claim the specific performance of it. We will therefore disregard this portion of the answer, and determine the rights of the parties on the interrogatory and the answer, that a partial agreement had been entered into, to the effect mentioned in said interrogatory. This being the title of the defendant, if any he has, the case stands as if before the sale the following agreement had been entered into in writing: " I, *Jacob Hoover*, do partially agree with *D. F. Miller*, here present and accepting, to buy on joint account with him, at the probate sale of the succession of *John P. McNeill*, the land belonging to that succession in Louisiana, and adjoining our respective plantations above and below : each to pay one-half of the price, and the land to be divided into two equal portions, in one of two ways

as shown by a sketch agreed upon by the parties, the upper half to belong to the said *Mill*er, and the lower half to me.

This agreement may be said to embrace two distinct contracts : the first is to purchase the land, with the understanding that each of the purchasers is to take the half adjoining his plantation ; the second relates to the fixing of the boundary between them. There is no contest in relation to the boundary, and the only question before us is as to the promise of the plaintiff to purchase the land on joint account with the defendant. That promise would be established beyond all doubt by the supposed agreement, if the word *partially* was not found in it. The thing to be purchased is accurately described : the agreement to purchase it would in that case be free from ambiguity, and the fact that no price is mentioned would not affect its validity. Both parties were present at the sale ; and so long as one bid under the agreement, and the other did not object, the bid, if accepted, was binding upon both.

The word *partially*, made use of by the plaintiff, standing as it does unexplained, cannot affect the contract to the prejudice of the defendant. The rule is, that in doubtful cases the agreement is interpreted against him who has contracted the obligation, and that if, as in the present case, the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted. C. C. 1952, 1953.

It was incumbent upon the plaintiff to have explained what he meant by a partial agreement; and as he has not done so, the law presumes that the explanation, if given, would have been to his disadvantage, and that there is nothing in this ambiguous expression that can diminish or affect his liability under the contract. *Whiting* v. *Ivey*, 3d Ann. 649. *Barian* v. *Sterling*, 2 N. S. 55. *Knight* v. *Munhison*, 1 R. R. 31.

There are other principles of law upon which the case might safely be determined. The answer of the defendant to the interrogatory was manifestly evasive ; and whenever this is the case, courts of justice are justified in disregarding the answer, and taking the interrogatory for confessed. This has repeatedly been done without an application from the party interested to that effect.

It was said in argument, that article 2255 was not applicable, because the possession had not been delivered to the defendant by the plaintiff. The possession was delivered to the defendant by the legal representative of the succession of *McNeill*, under which the plaintiff claims ; and he purchased with full knowledge of that actual adverse possession. Such a possession has the character required by the article of the code.

It was further urged, that the agreement of the parties to buy the land jointly, for the purpose of avoiding the competition of each other at the auction sale, was immoral, and that no action can be maintained upon it. Whatever may have been the motives which induced the parties to enter into the contract, the law has no means to reach them. It is enough that the contract itself is lawful on its face, and discloses nothing contrary to good morals or public policy.

The land was sold on a credit of one and two years, and the first installment has matured. We are of opinion, that the defendant has made out his case, and that upon his refunding to the plaintiff $5401 88 with legal interest from November 6th, 1850, till paid, in satisfaction of one-half of the first installment, if that installment has been paid, or on paying that amount to the dative executor of *McNeill*, if it has not already been paid by the plaintiff; and further, on

assuming the payment of the like sum of $5401 88, due on the 3d of November, 1852, according to the terms of the sale, and obtaining from the dative executor the release of the plaintiff for that amount, the defendant is entitled to a conveyance of the upper half of the land in controversy. For the purpose of carrying these dispositions into effect, as well as to have the boundary fixed, the case must be remanded.

It is therefore ordered, that the judgment in this case be reversed, and the case remanded for further proceedings according to law, and in conformity with the principles stated in this opinion; the plaintiff and appellee paying the costs of this appeal.