CUSACHS v. DUGUÉ.

---

(36 South. 960.)

No. 14,885.

CUSACHS v. DUGUÉ et al.

(June 22, 1903.)

APPEAL — JURISDICTION—RES JUDICATA — INTERROGATORIES — FAILURE TO ANSWER—DEFAULT—SETTING ASIDE—PAROL EVIDENCE—FRAUDULENT SIMULATION.

1. In an action en declaration de simulation pure and simple, the question of jurisdiction is determined by the value of the property which is the subject of the alleged simulated transfer, and not by the amount claimed by the party attacking such transfer.

On the Merits.

2. The order of a court directing interrogatories to be taken for confessed is not a judgment, nor is a motion to have that order set aside to be considered in the light of an application for a new trial, which, being refused, gives to the original order the force and effect of res judicata. It is within the sound discretion of the court to rescind, during the trial, its order taking the interrogatories for confessed.

3. When, not through contumacy, but by unintentional inadvertence, interrogatories are not promptly answered, the court is warranted in rescinding such an order when the parties to whom the interrogatories have been propounded go voluntarily upon the stand later on as witnesses, giving the other side the opportunity for and benefit of a thorough cross-examination.

4. Where a creditor, as plaintiff in an action en declaration de simulation, propounds interrogatories on facts and articles to the defendant (who holds title to real estate under a notarial act of sale from plaintiff's debtor), with a view of defeating a written act of sale, and those interrogatories, by order of court, are taken for confessed, the effect of the order is not ipso facto to cast the title back in the vendor, so as to make parol testimony subsequently offered to support the verity of the title which was attacked become parol testimony to take out of the vendor the title in him which had been established by the order taking the interrogatories for confessed. The answers to the interrogatories are merely "testimony" to aid plaintiff in his attack, and their effect is held in abeyance until final judgment.

5. A party holding title to property by authentic act is authorized when that act is attacked as a fraudulent simulation to sustain the title by her own testimony given on the stand. She is not cut off from doing so by the fact that the court had taken for confessed certain interrogatories propounded to her in consequence of her failure by mishap to have answered them promptly. The order taking the interrogatories for confessed for failure to answer is a "penalty" for neglect, and does not transform the failure to answer into a "judicial admission." Voluntarily taking the stand afterwards as a witness does away with any "presumed" confession.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Gaspar Cusachs against Joseph Dugué and others. Judgment for defendants, and plaintiff appeals. Affirmed.

 113 261 115 847

Dart & Kernan and Howe, Spencer & Cocke, for appellant. Eraste Vidrine and George Montgomery, for appellee Ruth Johnston. Kossuth V. Richard, for appellee Joseph Dugué.

### On Motion to Dismiss Appeal—Statement of the Case.

MONROE, J. Plaintiff alleges that he obtained judgment against the defendant Joseph Dugué for $895.75, recorded his judgment, and issued a writ of fi. fa. which was returned nulla bona; that after the institution of the suit, and before judgment, the defendant transferred the only property that he had out of which petitioner could have obtained payment, to wit, certain improved lots in New Orleans, to Miss Ruth Johnston, the consideration of the transfer purporting to be the note of the purchaser for $3,000, payable three years after date; "that the said sale is a simulation, pure and simple, and was made in order to defraud petitioner, and prevent him from recovering his just debt against said Joseph Dugué; that no consideration was given for said property, and that the note purporting to have been given in consideration of said sale has been returned to the said Miss Ruth Johnston, or is held by the said Joseph Dugué for her account, with the understanding that the title to said property should be in her name, while the real ownership thereof was vested in said Joseph Dugué"; and "that said sale should be canceled and annulled, as made in fraud of petitioner's rights, and the property subjected to petitioner's judgment."

The prayer is that Joseph Dugué and Miss Ruth Johnston be cited, and that "there be judgment in petitioner's favor and against said defendant canceling and annulling the said transfer as in fraud of petitioner's rights, and decreeing said property subject to petitioner's debt and judicial mortgage."

The defendants answered, affirming the reality and validity of the sale, and after trial there was judgment rejecting plaintiff's demand without prejudice to his right of action, if necessary after discussion of Joseph Dugué's property. From this judgment the plaintiff has appealed, and the defendants move to dismiss upon the ground that the action is revocatory, and that, the amount claimed by the attacking creditor being only $895.75, this court is without jurisdiction ratione materiæ.

### Opinion.

It is evident from the allegations of the petition which have been quoted that this is an action en declaration de simulation pure and simple, the fact that the simulation is said to have a fraudulent purpose not affecting that question. McAdams v. Soria, 31 La. Ann. 863. In such case the question of jurisdiction is determined by the value of the property which is the subject of the alleged simulated transfer, and not by the amount claimed by the party attacking such transfer. State ex rel. Bloss v. Judges, 33 La. Ann. 1351; Chaffe & Sons v. DeMoss, 37 La. Ann. 186; Godshaw & Plant v. Judges, 38 La. Ann. 643; Katz & Barnett v. Gill, 43 La. Ann. 1041, 10 South. 364.

The motion to dismiss the appeal is therefore overruled.

(June 20, 1904.)

### Statement of the Case.

NICHOLLS, J. The plaintiff alleged: That he was a judgment creditor of Joseph Dugué in the sum of $895, with interest. That his judgment had been recorded. That he had caused a writ of fi. fa. to issue under said judgment, which had been returned nulla bona by the sheriff. That before judgment was rendered in petitioner's favor, but after petitioner's suit had been instituted, Joseph Dugué transferred the only property he possessed out of which petitioner could have obtained payment to Miss Ruth Johnston by act before Eraste Vidrine, notary public,

on October 29, 1900. That the consideration of said transfer purported to be $3,000, represented by the note of the purchaser at three years after date, with 8 per cent. per annum interest from date until paid, secured by vendor's mortgage retained upon said property, which he described.

That said sale was a simulation pure and simple, and was made in order to defraud petitioner, and prevent him from recovering his just debt against Dugué. That no consideration was given for said property, and that the note purporting to have been given in consideration of said sale had been returned to the said Miss Ruth Johnston, or was held by the said Joseph Dugué for her account, with the understanding that the title to said property should be in her name, while the real ownership was vested in Dugué. That said sale should be canceled and annulled as made in fraud of petitioner's rights, and the property subjected to petitioner's judgment. That Dugué and Miss Johnston should be ordered to answer categorically and under oath certain annexed interrogatories on facts and articles.

In view of the premises petitioner prayed that Dugué and Miss Ruth Johnston be cited and ordered to answer categorically and under oath in open court, on a day to be fixed, the interrogatories on facts and articles hereunto annexed, after due proceedings had; that there be judgment in petitioner's favor against the defendants canceling and annulling the transfer made by Joseph Dugué to Miss Ruth Johnston of the property described in the foregoing petition as made in fraud of petitioner's rights, and decreeing said property subject to petitioner's debt and judicial mortgage; and petitioner prays for all general and equitable relief.

The court ordered Dugué and Miss Johnston to answer the interrogatories propounded to them under oath in open court on the 12th of March at 11 o'clock.

The questions propounded were as follows: To Dugué:

(1) Are you the vendor of a certain piece of property described in act passed before Eraste Vidrine Notary Public October 29th 1900?

(2) Is it not a fact that no consideration was paid for said property?

(3) Is it not a fact that the note said to have been given as a consideration for said sale is not to be enforced against the said Miss Ruth Johnston, the purchaser, and is held by you for her account, or by some one else, who has given no consideration therefor?

Who holds said note now?

Is it not a fact that no consideration was paid by said person for said note?

(4) Is it not a fact that said property is held by said Ruth Johnston for your account, and the note given therefor is to be returned, or has been returned, to her without payment, and without consideration?

(5) Is it not a fact that the said transfer was not a real sale, but made for the purpose of preventing your creditors from collecting their claims against you?

Is it not a fact that you live in said property without being held to pay any rent therefor, or that you collect rent on same for your own account?

Interrogatories propounded to Miss Johnston:

(1) Are you not the vendee of a certain piece of property described in an act of sale passed before Eraste Vidrine, notary public, on the 29th day of October, 1900?

(2) Is it not a fact that the note given by you as a consideration of said sale is to be or has been returned to you without payment, and without any consideration?

(3) Is it not a fact that said transfer was made to you under an agreement that you were not to be called on to pay said note, and the property is to remain in your name for the benefit of the said Joseph Dugué?

(4) Is it not a fact that the said Joseph Dugué collects the rents of said property, and uses them for his own account, or lives in said property himself without any obligation to pay rent therefor?

On March 12th Miss Johnston answered, pleading, first, the general issue.

Further answering, she admitted having entered into the act of sale mentioned in plaintiff's petition, but averred that same was a bona fide sale, as it purported to be, and that she had in no way colluded with Dugué to defraud his creditors. On the 14th of March Dugué answered. He pleaded, first, the general denial. Further answering, he admitted executing the sale mentioned in plaintiff's petition. to Miss Ruth Johnston. He specially denied that said sale was a simulation pure and simple, or that it was made in order to defraud plaintiff, and prevent him from collecting or recovering his just debts, as charged in his petition. He specially denied that no consideration was given for said property, and that the note given therefor was returned to Miss Ruth Johnston, as charged. He further averred that the sale made by him to Miss Ruth Johnston was made in good faith, and with no intention of defrauding his creditors.

In view of the premises he prayed that plaintiff's suit be dismissed, at his costs, and prayed for general and equitable relief.

On the 12th of March, on plaintiff's attorney suggesting that the defendants had been ordered to answer the interrogatories propounded to them on that day at 11 o'clock, that a motion was presented at that hour to have the defendants called to answer the same as ordered, and that, after waiting until half past 12 o'clock, defendants were called in a loud voice, and, still failing to appear, the court ordered the interrogatories on facts and articles propounded to defendants to be taken for confessed as to the matters and things therein interrogated.

A minute entry of that date recites that plaintiff offered in evidence the petition and the interrogatories thereto attached, the order of court thereon indorsed, the citation issued to Dugué and the sheriff's return thereon, the citation issued to Miss Johnston and the sheriff's return thereon.

On the 18th of March, counsel for Miss Johnston; suggesting that he was her counsel of record when the order taking the interrogatories for confessed was made, that he was in court at the time, that no notification was brought to him of the fact that the court was about to pass on said matter, prayed for and obtained a rule on the plaintiff to show cause why said order should not be set aside.

A similar application was made on behalf of Dugué, his counsel suggesting that his client was in the hallway adjoining the court-room at 11 o'clock, and remained there until half past 11, when he had to take the stand as a witness in another case in another division of the court; that he was on the stand as a witness when he was called; and that his counsel was also engaged in the same case in which he was a witness, which was on trial when the order taking the interrogatories for confessed was rendered.

A rule to show cause was ordered. On trial of the rule the court, on the 29th of March, refused to set aside the order taking the answers for confessed.

On the 4th of June Miss Johnston filed a supplemental and amended answer, in which she averred that the judgment in favor of Cusachs against Dugué set up by the plaintiff was a simulated judgment, obtained by fraud and collusion between Cusachs and Dugué, and was otherwise null and void.

That the return of the sheriff on the writ issued under said judgment was false and untrue, as at the time when said writ was issued and said return made Joseph Dugué was the owner, as he was still to-day, of a certain piece of real estate, which she described, which said real estate was assessed

at $2,000, and stood in the name of Joseph Dugué; that the said writ and return were nullities, having been issued upon a judgment null and void.

That some time after the institution of the suit under which said judgment was obtained, but before the writ of fieri facias was issued, Dugué transferred to Cusachs, for the sum of $525, two certain pieces of real estate, which she described, which said real estate was fully worth $1,500; and that this transfer was likewise simulated. and was done in order to confer a preference on the said Cusachs, and otherwise to defraud the creditors of Joseph Dugué.

That she was a creditor of Dugué for the sum of $2,969.25, being the amount of certain loans and advances made to Dugué, which she specifically set forth. She denied that Cusachs was a creditor of Dugué for the sums on which the said judgment was obtained. She affirmed all the averments of her original answer.

Miss Johnston filed a second supplemental answer, in which she averred that the judgment on which Dugué declared was a nullity for the reason that no copy of the petition on which it was rendered was ever served on Dugué, and for the further reason that' at the time of the institution of that suit Dugué and Cusachs were in partnership, which partnership was still unliquidated.

On the 22d of April, 1903, the district court rendered judgment in favor of the defendants, setting aside the order taking the interrogatories for confessed and dismissing plaintiff's suit and demand without prejudice to his right of action, if necessary, after discussion of Joseph Dugué's property.

Plaintiff appealed.

## Opinion.

In the opinion of the district judge accompanying the judgment which he rendered he declared that the weight of the testimony repelled the charge of simulation and

fraudulent conduct between the defendant Dugué and his codefendant; that all the facts went to show consideration and verity in the contract attacked by the plaintiff. Notwithstanding this declaration the court nonsuited the plaintiff, leaving him free to renew his action at some future time, "if necessary, after discussion of Joseph Dugué's property."

The plaintiff has brought this· appeal before us, urging that we maintain jurisdiction over it on the ground that the action is one en declaration de simulation, and from that standpoint we deal with it.

The defendant has prayed for no amendment of the judgment. We have consequently no authority to alter it. We do not think the court, in the judgment as rendered, erred to the legal prejudice of the plaintiff. We agree with the district court that the evidence adduced went to show consideration and verity in the act attacked. The district judge seems to have been throughout the case greatly hampered in his action by the failure of the defendants to have answered the interrogatories on facts and articles propounded to them, and by his own action in having refused to set the same aside on application. Referring to that matter in his opinion, he said:

"The order taking the interrogatories for confessed had the effect of fixing the transaction attacked as simulated, but I do not find this an insuperable obstacle in the pathway of the defendants, for the reason that it is well settled that a creditor cannot successfully attack a simulation unless it operates to his injury. * * * This order pro confessis gave me some thought on the trial whether I ought to hear the defendants to deny the simulation, but, as there were other issues—e. g., whether or not Dugué owned other property liable to execution—I deemed it best to hear the whole case. If defendant had failed to show that he had other property, of course I would have enforced the order pro confessis, and given the plaintiff judgment. The testimony, as a whole, has impressed me that, as the suit must end in nonsuiting the plaintiff, that all the interlocutory orders should fall with it, and as a matter of plain justice; and to put the parties on an equal footing for the future I feel that I ought to set aside said order taking the in-

terrogatories for confessed. It may be that Dugué will pay the plaintiff, or that plaintiff may successfully execute his judgment on other property and collect it. In that event it would be a hardship on the other defendant to have her title clouded by said order."

The judge, it will be seen, adhered to his ruling that he could not set aside the order taking the interrogatories for confessed up to the time that he reached the conclusion that the situation called for a judgment of nonsuit, and he then revoked the order as being the natural consequence of that judgment.

During the trial, and over plaintiff's objections, the two defendants, as well as other parties, were permitted to testify in support of the verity of the act of sale from Dugué to Miss Johnston. Plaintiff complains greatly of this action of the court, and of its final action in revoking the order taking the interrogatories for confessed.

Counsel invoke article 548 of the Code of Practice, which declares that "a judgment when once rendered becomes the property of him in whose favor it has been given, and the judge cannot alter the same except in the mode provided by law," and refer also to the decision of this court in Warren v. Copp, 48 La. Ann. 810, 19 South. 746, and to article 556 of the Code of Practice. They assert that "a judge cannot grant a new trial after the expiration of the legal delays; that he cannot vacate a judgment rendered by him which he had refused to set aside two years after the application for a new trial had been made, heard, and refused"; and in that connection they cite Culverhouse v. Marx, 38 La. Ann. 667, and in reference to the testimony permitted to be adduced on the trial they urge that the court erred in permitting the defendants to contradict by parol evidence the title established by the interrogatories confessed:

First, because such ruling amounted to permitting them to establish title to real estate in face of the prohibitory articles of

the Code and the jurisprudence of the state, and

Second, because defendants were estopped by their judicial admissions.

They cite Bach v. Hall, 3 La. 117; Hoover v. Miller, 6 La. Ann. 204; Bauduc v. Conrey, 10 Rob. 466; and Wright-Blodgett Co., Ltd., v. Elms, 106 La. 159, 30 South. 311.

We do not regard the order of a court directing interrogatories on facts and articles to be taken for confessed as in any sense a judgment. A motion to have that order set aside cannot be considered in the light of an application for a new trial, which, being refused, gives to the original order the force and effect of res judicata.

In Lawrence v. Ballou, 37 Cal. 519, the Supreme Court of California held that the doctrine that a previous ruling had become the "law of the case" had no application except as to the decisions of appellate courts. It said:

"When the court of last resort has finally ruled upon the point, and the case has been returned to the court below, the principle invoked applies, and the decision of the appellate court, right or wrong, has become 'the law of the case' in all subsequent proceedings, for the obvious reason that otherwise the end of the case might never be reached. But if at the trial of a cause at nisi prius the court makes a ruling upon a certain point, the court is not bound by it if the same point arises again. On the contrary, the court may and should change its ruling if in the meantime it has become satisfied that it was erroneous."

In United States v. Elliott, 41 Pac. 721, the Supreme Court of Utah, referring approvingly to the case of Lawrence v. Ballou, and quoting additionally Railway Co. v. Shoup, 28 Kan. 394, 42 Am. Rep. 163, on the second appeal of a case reversed (under the special circumstances presented) its own former decision in the same case.

We do not think the district court was committed absolutely to the correctness of its own ruling. It had the legal right to reverse it, subject to correction by this court (as its appellate court), should the ultimate

ruling have been wrong. Culverhouse v. Marx, 38 La. Ann. 667.

Appellant relies greatly upon Warren v. Copp, 48 La. Ann. 810, 19 South. 746, as going to show that, after an order had been rendered by a court taking interrogatories for confessed, the subject-matter had got beyond the control of the court; but the facts of that case differ from the present one. In Warren v. Copp relief was sought against the effect of an order directing interrogatories on facts and articles to be taken for confessed after a final judgment had been rendered in the case in which that order had been rendered. The action brought was one for nullity of judgment, and the case was controlled by the rules applicable to that action. In the case at bar no final judgment had been rendered when relief was sought. The rights of parties was the very object of the investigation then still pending before the court, and the object of the answers was thereafter to utilize them "as evidence" in the cause itself. Code Prac. art. 348.

In Elder v. Rogers, 11 La. Ann. 606, where the court rescinded its previous order directing interrogatories on facts and articles to be taken for confessed, and permitted a garnishee to put in his answers to the plaintiff's interrogatories, this court said that:

"It was in the sound discretion of district judges to rescind their interlocutory orders; that the order in that case was not a definitive judgment, as contended for, and therefore no formal motion for a new trial was necessary."

In Rose & McCarthy v. Whaley & Edwards, 14 La. Ann. 374, the court, under the facts of that case, rescinded an ex parte order taking interrogatories for confessed, and allowed the garnishee to answer; saying:

"The garnishee had the right to ask of the court at any time before judgment that the order taking his interrogatories for confessed might be set aside, and that he might be allowed to answer; and it was within the sound discretion of the court, and also its duty, to grant the request if the ends of justice would thereby be attained."

In this particular case the plaintiff lost no special vantage ground by the rescinding of the order.

Both defendants took the stand as witnesses, and afforded the plaintiff the opportunity for and the benefit of a thorough cross-examination. Plaintiff says that the effect of an order rescinding that taking the interrogatories to be taken for confessed is to permit a matter closed by that order to be reopened for investigation by parol evidence; that the effect of the order taking the interrogatories for confessed was ipso facto to throw back to Dugué the title of the property which had been apparently conveyed to Miss Johnston; and that, therefore, the effect of any subsequent parol testimony offered by Miss Johnston (particularly her own testimony) would be to take the title of real estate out of Dugué and to invest it in herself by parol.

We do not think that the effect of taking the interrogatories propounded to Miss Johnston for confessed would be to cast the title of the property ipso facto back in Dugué. The result of that condition of things would have been to allow plaintiff to make use of the assumed answers as "testimony" in support of his demand, and to aid him in his attack. Whether plaintiff would eventually succeed in his demand would depend upon all the facts of, and upon all the testimony taken in, the case. Henshaw v. Flannery, 27 La. Ann. 671. Miss Ruth Johnston was not brought into the case under necessity on her part of showing title to herself from Dugué by parol testimony; on the contrary, the parties all went into the case with the title already transferred to her by Dugué himself by authentic act. She was not called upon, for the purpose of showing title in herself, to have recourse to parol. Any parol testimony she would seek to introduce or succeed in introducing would be not to create

title in herself, but to resist having her title taken away from herself upon a charge of fraud and simulation. We think she was entitled to sustain and maintain the title which she held by authentic act from Dugué himself from any - attack made against it by parol evidence if she deemed it necessary. In doing so she was not seeking to obtain title by parol, for she already held the title. To resist by parol having certain property which one holds by authentic act from being taken away is a very different matter from seeking by parol to obtain property for one's self, the title to which stands in another. We think when she was attacked she was entitled to take the stand as a witness on her own behalf.

The order taking the interrogatories for confessed should (so far as mere regularity was concerned) have been set aside before she did so, but her right in the premises would have existed none the less. The court, having itself rectified the irregularity, placed matters as they should have been originally. Culverhouse v. Marx, 38 La. Ann. 667; Bank v. Choppin, 46 La. Ann. 638, 15 South. 304. When Miss Johnston testified her testimony as a witness was entitled, as the law now stands, to be weighed by the judge as other testimony. Code Prac. art. 354.

If plaintiff's claims and pretensions were in fact warranted, the situation did not call, as a matter of necessity, for his having recourse to written testimony, and we do not think that by propounding interrogatories on facts and articles to Miss Johnston he could properly cut her off from her right of legal defense because of unintentional inadvertence on her part; for such, we are of opinion, the fact was.

Plaintiff contends, however, that the defendant was "estopped" by the judicial admissions which resulted from her not answering the interrogatories, but it can scarcely be said that defendant did in fact make any "judicial admissions." It is true that as a penalty for not answering the interrogatories promptly she was, for so doing, "presumed" to have confessed the matters as to which the questions were asked; but that is not in fact any more an admission than permitting a judgment by default to be taken would in truth and in fact be an admission.

Article 360 declares that when the defendant suffers judgment by default to be taken against him, the issue is joined tacitly, because such defendant is presumed to have confessed the justice of her adversary's demand. Therefore the plaintiff is allowed to proceed with his proofs in order to have the judgment confirmed. But this presumptive confession yields to the subsequent action of the defendant showing by appearing that the presumption was not well founded, and the judgment by default is set aside. Bank v. Choppin, 46 La. Ann. 638, 15 South. 304.

While continued neglect on the part of Miss Johnston to have answered the interrogatories would have justified the conclusion that she could not have truthfully negatived what was contained in them, no such conclusion could be entertained when she voluntarily took the stand and subjected herself to cross-examination. We do not think she was estopped. Gaidry v. Lyons, 29 La. Ann. 7. We find no ground for reversing the judgment appealed from, and it is hereby affirmed.