¡KAMITER, Justice.
 

 The instant consideration of this disbarment proceeding, instituted by the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association against Delvaille H. Theard, occurs on oppositions to the Commissioner’s report. Initially, it is well to briefly review earlier phases of the matter.
 

 Under date of February 2, 1950 the 'Committee gave notice in writing to respondent that it was undertaking an investigation of certain conduct on his part as a member of the Bar of Louisiana, the communication detailing and specifying some eleven acts of alleged misconduct and further setting forth that he would be afforded the opportunity of being heard and of defending himself before the Committee.
 

 The contemplated hearing was held in the City of New Orleans on June 5 and 6, 1952, at which respondent was present and represented by counsel of his choice; and, by stipulation, it was restricted to a consideration or. investigation of specification No. 1 as listed in the above mentioned communication. The charge therein made was that on January 2, 1935, while engaged in the active practice of law in the City of New Orleans, respondent forged the signatures of Olga Wexler and Alys Senn to a promissory note for $20,000; and that subsequently, having paraphed it to appear as an authentic mortgage note, he sold this forged instrument for a valuable consider
 
 *101
 
 ation to Mrs. Annie W. Forsyth, widow of Julius Forsyth.
 

 In opening the hearing the Committee offered proof of the charged forgery and of respondent’s having received, from a representative of Mrs. Forsyth, the sum of $12,601.25 for the note. Then respondent, instead of attempting to contradict such proof, admitted that the signatures on the note were in his handwriting; and, further, he sought to establish (by written reports and by his own testimony and that of others) the existence at the time of a mental illness or a form of insanity which rendered him incapable of wilfully committing the forgery and uttering. For example, under examination by his own counsel, he testified in part:
 

 “Q. Mr. Theard, the Committee is investigating, as you know, a matter which appertains to a note dated January 2, 1935, which has been offered in evidence as ‘Committee’s Exhibit 1.’ Will you look at that note and tell me what you remember of its execution (handing note to witness). A. You showed me that note in your office, Mr. Rivet. Frankly, I don’t remember anything about it.
 

 “Q. You won’t deny that those signatures on that note are in your handwriting? A. No. I told you so, and you made the admission. I recognize my handwriting in the signatures and the statement of the reduction of the payment of interest. I recognize that that is my handwriting.
 

 “Q. Do you remember selling the original of that note to anybody? A. No.”
 

 On completion of the investigation the-Committee petitioned this court for the disbarment of respondent, it alleging his. guilt of the charge set forth in specification No. 1 as was proved at the hearing held June 5 and 6, 1952.
 

 To the petition respondent tendered' several exceptions. Particularly, in one he challenged the right of the Committee to maintain the action in view of his mental illness (as assertedly disclosed by the evidence adduced at the Committee hearing) at the time of the misconduct; and in another he pleaded prescription, laches and estoppel in bar of the disbarment. All' exceptions, after having been thoroughly considered, were overruled by us. See-222 La. 328, 62 So.2d 501.
 

 In an application for a rehearing the above specifically described exceptions, were reurged and, for the first time, respondent further contended that the “taking away of a lawyer’s right to practice, after restoration to health, for acts committed during a mental infirmity precluding conscious guilt, would be inimical to Amendment XIV of the United States Constitution, which prohibits the deprivation of a valuable right without due process of law.” The application for a rehearing, calling due consideration, was denied.
 

 
 *103
 
 Thereafter, answer was filed, it containing a general denial of the factual allegations on which the disbarment is sought and, additionally, the following affirmative averments:
 

 “Further answering, respondent says that the act charged as misconduct against respondent occurred nearly eighteen years ago; that at that time respondent was suffering from a mental illness which rendered him incapable of guilty or wilful conduct and deprived him of the ability to distinguish right and wrong; that he carries no recollection of the act charged against him; that at this late date he is without records and other means of defending himself; that numerous witnesses best acquainted with his condition in January of 1935, and theretofore, have died; that a previous Committee considered and had the opportunity to investigate respondent’s conduct; that the compulsion to defend himself against said stale occurrence operates to his prejudice, is essentially unjust, and results in depriving respondent of the procedural due process guaranteed by Section 2 of Article 1 of the State Constitution, and by the Fourteenth Amendment to the Constitution of the United States.
 

 “Since April 1948, respondent has resumed the active practice of law without any complaint levelled at his conduct.
 

 “Respondent finally says that he never at any time consciously violated any law relating to the professional conduct of lawyers and to the practice of law, nor has he ever wilfully violated any rule of professional ethics.”
 

 Later, respondent submitted special pleas of prescription and unconstitutionality which merely reiterated and amplified similar pleas theretofore tendered.
 

 On proper motion, after issue had been joined, Mr. John Pat Little, an attorney at law who had engaged in active practice for a period of not less than ten years, was appointed Commissioner to take the evidence in chambers and to report to this court his findings of fact and conclusions of law. Pursuant to the appointment he held a hearing on March 9, 1953, in which the greater part of the evidence offered was that introduced in the proceeding conducted by the Committee on June 5 and 6, 1952. Only three witnesses testified before the Commissioner. One was produced by the Committee in further proof of the forgery and uttering and to show that respondent knowingly committed the unlawful acts. The remaining two were called by respondent merely to identify certain records.
 

 After termination of the hearing the Commissioner prepared and filed a lengthy and well considered written report in which he analyzed the evidence, set forth his findings of fact, and discussed and announced his conclusions of law. In summarizing the evidence he commented;
 

 “The commission of the wrongful acts by the respondent is established beyond
 
 *105
 
 any doubt; it is even conceded in the respondent’s brief to the Commissioner. No evidence was produced by counsel for the Committee, nor even offered, to rebut the alleged mental condition of the respondent. It must then, from the record, be held that the respondent was suffering under an exceedingly abnormal mental condition, some degree of insanity.”
 

 With respect to the law determined to be applicable, as well as to his conclusions therefrom, the Commissioner observed in part:
 

 “It is the gist of the respondent’s argument that being without his mental faculties he was without volition or control over his actions, and, therefore, cannot be guilty of misconduct. * * * This feature of the case rests squarely upon the question of whether, or not, the defense of insanity is sufficient to prevent this Court from disbarring a lawyer who has been found guilty of having forged and uttered a promissory note. * * *
 

 sjs íft sj: ‡
 
 %
 
 ‡
 

 “Having in mind the Court’s decision on the exceptions found in 62 So.2d 501 and particularly the portion thereof relating to respondent’s exceptions based upon insanity on page 503, the Commissioner is constrained to find that the law as expressed in that opinion does not relieve the respondent from the effects of his actions.
 

 “
 
 * * * * * *
 

 “In conclusion the Commissioner finds that the respondent, Delvaille H. Theard, is guilty as charged of forging and uttering a certain promissory note, dated January 2, 1935, in face amount of $20,000.00, purporting to bear the signatures of Olga Wexler and Alys Senn.
 

 “Commissioner further finds that, as a matter of law, the abnormal mental condition of the respondent at the time of such forgery and utterance does not constitute a defense to disbarment proceeding therefor.
 

 “Accordingly, the Commissioner has no alternative but to recommend to the Supreme Court of Louisiana that a decree of disbarment be entered herein; and that the Court order the name of Delvaille H. Theard be stricken from the roll of attorneys permitted to practice before that Court.”
 

 Now, in opposing the Commissioner’s report, respondent first assigns error to the conclusion that the abnormal mental condition existing at the time of the commission of the wrongful acts does not constitute a defense to disbarment.
 

 Influencing that conclusion, as the Commissioner points out, were certain pronouncements of this court made in connection with our consideration of respondent’s tendered and overruled exceptions to the petition, they having been as follows : “ * * * we do not view the mental deficiency of a lawyer at the time of his misconduct to be a valid defense to his disbarment. Strangely enough, counsel for respondent apparently takes it for granted
 
 *107
 
 that, because evidence has been produced indicating that respondent was probably suffering from amnesia and other mental deficiencies at the time of his misdeeds, his insanity
 
 (which we will concede for purposes of this discussion)
 
 operates as a complete bar to this proceeding.
 

 “We think that counsel is mistaken in his assumption., * * * One of the qualities requisite for admission to the bar is that the applicant be of good moral character. When a lawyer has committed peculations, forgeries and breaches of trust, he violates the oath he has taken to demean himself honestly in his practice and the good character he possessed no longer exists. And it will not do for respondent to say that he was suffering from a mental aberration or amnesia depriving him of the ability to distinguish between right and wrong. In disbarment, unlike criminal prosecution or a civil suit for recovery of money based on an offense or quasi offense, consideration of the interest and safety of the public is of the utmost importance for, whereas it may not be humane to punish by confinement to prison one who labored under the inability to understand the nature of his wrongful acts, it is quite another matter to permit such a person to continue, as an officer of the court and to pursue the privilege of engaging in the honorable profession of counsellor-at-law when he, by his misconduct, has éxhibited a lack of integrity and common honesty.
 
 And in our opinion it matters not whether the dishonest conduct stems from an incapacity to discern-between right and wrong or was engendered by a specific criminal intent.”
 
 (Italics ours.)
 

 Respondent’s counsel now argues that the quoted pronouncements and rulings relating to the exception to the petition were merely interlocutory; that they did not constitute the "law of the case”; and that, consequently, they were not binding on the Commissioner in his consideration of the matter. We are unable to agree; and the three cases cited by counsel do not sustain the argument, they being Levy v. Wise, 15 La.Ann. 38; Culverhouse v. Marx, 38 La.Ann. 667 and Cusachs v. Dugue, 113 La. 261, 36 So. 960. In each of those cases the court considered the question of whether a district judge has the right to revise an interlocutory decree, when the matter affected by it is brought up anew in proper form, and held that he is so empowered. With respect to an appellate court the doctrine prevailing is that its final ruling on an exception is the “law of the case” as to the point covered. See Cusachs v. Dugue, supra; Jacob v. Rochel, 164 La. 114, 113 So. 786; State ex rel. Navo v. Baynard, 179 La. 785, 155 So. 225; City of Gretna v. Aetna Life Insurance Company, 207 La. 1085, 22 So.2d 658.
 

 But if the doctrine were otherwise we know of no good reason for changing our previous ruling. It appears to be logically sound; it is supported by
 
 *109
 
 ■competent authority; and no holdings to ■the contrary have been brought to our attention.
 

 Under a general heading, entitled
 
 '“A
 
 Commissioner’s report should be rejected which does not include findings of .■all pertinent facts and does not conclude .all issues of law”, respondent lists in his ■opposition three complaints which we shall •consider in reverse order. It is said: ■“The Commissioner made no findings of fact on evidence tendered to prove that all •of respondent’s records had been taken out ■of his custody under writs issued long years since.” If the issue in this proceeding were whether or not the respondent had committed the wrongful acts with which he is charged, and the missing records were material thereto, the complaint would be justified. But he has admitted the forgery offense and, consequently, the matter of the loss of some of his records seems irrelevant and unimportant here.
 

 Next he complains: “The Commissioner expresses no conclusion on the legal point that it is .essentially unjust to require respondent to defend himself against charges brought more than fourteen years after occurrence of the acts involved in the accusation, and where such acts are not corroborative of recent conduct.” The same legal point was advanced in this court on the previous hearing of the exceptions to the petition, particularly in connection with the one in which respondent had pleaded prescription and laches. There we observed and ruled:
 

 “The fifth exception of respondent is that of prescription, laches and estoppel. It is asserted that, since the acts complained of occurred more than
 
 17
 
 years ago, the offense is so stale that it would be inequitable and unjust to permit the prosecution of the proceeding and, further, that respondent would be highly prejudiced in defending the suit after the passing of such a great length of time.
 

 “The exception cannot be sustained. Our law of prescription is purely statutory and the fact that a long time has elapsed between the commission of the acts and the bringing of the charges does not, of itself, provide a just ground for dismissing the suit. Indeed, it appears that respondent was confined to an insane asylum for several years and that he was under a judgment of interdiction from June 1941 until May 7th, 1948, during which time the Committee was unable to act. If respondent has been prejudiced by the delay, this is a matter which can be shown on the merits of the case.”
 

 Supplementary to the quoted observations, it may be pointed out that in 1937 a Bar 'Committee sought to investigate complaints of misconduct on the part of respondent, but action thereon was deferred indefinitely at the request of his uncle who stated that the nephew was then in the insane asylum and interdiction proceedings
 
 *111
 
 were pending (they were instituted August
 
 4,
 
 1936).
 

 Although the exception of prescription and laches was overruled, to which ruling We adhere for we are convinced that it was correct, respondent was reserved the right to show on the merits that he was unjustly prejudiced by the lapse of time. But there is nothing in the record before us from which we can conclude that the delay resulted in prejudice to him in the preparation of a defense.
 

 Finally, respondent asserts: “The Commissioner disposes of respondent’s constitutional pleas by erroneously presuming that they have already been decided adversely to respondent.” And in his report the Commissioner states: “The additional plea of unconstitutionality seeks to invoke the 14th Amendment to the United States Constitution as a defense. It is claimed that the disbarment of the respondent herein would be a deprivation of his substantive rights in violation of that Amendment. This plea is substantially the same as that found in Article IV of respondent’s ‘Answer with Reservation of Exceptions’, filed herein and also Article IV of respondent’s 'Petition for Reconsideration of Exceptions’. The Court had that answer and that petition before it when a rehearing was denied on January 12, 1953. Your Commissioner must presume that the Court has already considered the constitutional point thus raised and has decided it adversely to the respondent.”
 

 The mentioned constitutional pleas' were not directly passed upon by us heretofore for the reason that they were offered for the first time in the application for a rehearing on the exceptions to the petition. However, they appear to be without merit. The pleas, quoted above and as we appreciate them, assume that a license to practice law is a natural or a constitutionally granted right. But the assumption is. erroneous. As said in
 
 7
 
 C.J.S., verbo Attorney and Client, § 4(b): “The right to practice law is not a natural or constitutional right, nor an absolute right or a right de jure, but is a privilege or franchise. The right to practice law is not ‘property/ nor in any sense a ‘contract,’ nor a ‘privilege or immunity/ within the constitutional meaning of those terms. It cannot be assigned or inherited, but must be earned by hard study and good conduct.” See also 5 American Jurisprudence, verbo Attorney at Law, Section 14; State v. Rosborough, 152 La. 945, 94 So. 858; Ex parte Steckler, 179 La. 410, 154 So. 41; In re Mundy, 202 La. 41, 11 So.2d 398; Meunier v. Bernich, La.App., 170 So. 567.
 

 In the brief of respondent’s counsel it is said “that the right to practice law, once granted, does fall under constitutional protection”, as is made clear by decisions of the United States Supreme Court in Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366, and Ex parte Robinson, 19 Wall. 505, 22 L.Ed. 205. What those decisions stand for, as we read them, is shown by the fol
 
 *113
 
 lowing extract taken from the latter: “* * * Before a judgment disbarring .an attorney is rendered, he should have notice of the grounds of complaint against him and ample opportunity of explanation .and defense. This is a rule of natural justice and should be equally followed when proceedings are taken to deprive him of his right to practice his profession, as when they are taken to reach his real or personal property. * * * ”
 

 In the quoted extract the court is not •holding that the practice of the profession is a natural, «onstitutional, or property right. Rather, it is announcing that natural justice requires that an attorney be notified and heard before he is deprived of the privilege of practicing his profession. We agree thoroughly with this principle, and we believe that the stated requirement has been fully met in the instant proceeding.
 

 Petitioner herein (the above named ■Committee) excepts to that part of the Commissioner’s report which holds that respondent “was suffering under an exceedingly abnormal condition, some degree of insanity.” It alleges, in its exception, “that, on the contrary, the evidence abundantly shows that he deliberately and consciously, and with malice aforethought, attempted to simulate and feign, and did so simulate and feign, the genuine signature of the alleged makers of the mortgage note, which he now admits was forgery.” However, in view of the conclusion reached and hereinabove declared, we need not determine the Committee’s exception.
 

 For the reasons assigned it is ordered, adjudged and decreed that the name of Delvaille H. Theard, respondent herein, be stricken from the roll of attorneys and his license to practice law in Louisiana be, and the same is hereby, cancelled. Respondent shall pay all costs of this proceeding.