## No. 9954

RAYMOND POCHELU vs. EDMOND CATONNET—JAMES FAHEY AND WILLIAM DOLL ET ALS., INTERVENORS.

A sale made to one not a creditor, for a price in cash, though inadequate to the value of the property conveyed, cannot be annulled at the instance of the creditors of the vendor, who was insolvent at the time, to the knowledge of the purchaser, on the charge of simulation.

A *dation en paiement*, made in consideration of a valid and subsisting indebtedness, cannot be revoked on the charge of simulation, if the conveyance was really intended to pass a title to the property to the creditor, and he really acknowledged full payment of the debt.

In an action *en declaration de simulation*, pure and simple, which is unaccompanied with an *alternative* prayer that if the act complained of is not found to be a fraudulent simulation, it be declared to have been one in-*fraud* of creditors, and, as such, annulled. it is not in our power to render judgment annulling it on the latter ground.

It is the settled jurisprudence that this Court is without jurisdiction in revocatory actions which seek to subject property that has been *fraudulently* conveyed to the payment of debts less than $2000 in amount.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Blanc & Butler* for Plaintiff and Intervenors, Appellees.

*Thos. J. Semmes* and *T. M. Gill* for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J. Plaintiff, being a creditor of Manual Navos & Co., composed of Edmond Catonnet and Manual Navos, for the sum of $1000, and of Manual Navos, individually, for $200, demands the annulment of a certain sale made by Manual Navos to one Henry Rougagnac of a certain coffee-house, fixtures and paraphernalia, which is situated on the premises bearing the municipal numbers 9 and 11 of St. Charles street, in the city of New Orleans, on the allegation that it was a fraudulent simulation.

He likewise demands the revocation of a *dation en paicment* of same property from Rougognac to Bernard Maylie, of subsequent date, on like averment of simulation.

This property was acquired from Thomas Handy by Manual Navos & Co., and while said firm owned it, a portion of said indebtedness was created in the purchase of materials and the price of workmanship employed in the construction of certain improvements and repairs on said premises, and on this property the plaintiff seeks to have his mechanic's lien and privilege enforced.

He charges bad faith, insolvency, fraud and conspiracy on the part of all the parties enumerated and resulting injury therefrom.

He specially charges that the notes of $1000 and $400, which Maylie surrendered to Rougognac in exchange for or in consideration of said property, represented no real and actual indebtedness of the latter, but that same were fictitious and simulated.

He represents and claims that said defendants have, by their said wrongful and tortious acts, made themselves jointly and severally liable to plaintiff for the amount of his demands.

He couples with the foregoing averments an allegation of an apprehended transfer during the pendency of the suit, and prayed for and obtained writs of injunction and sequestration.

James Fahey and William Doll, whose united demands aggregate $1769 75, intervened and joined the plaintiff in the prosecution of his demands and upon similar averments.

The defendants tendered, as an exception *in limine*, the plea of no cause of action, and the same having been overruled, they plead the general issue. But Catonnet made an additional answer to the effect that he was released from all liability by the dissolution of the firm of Manual Navos & Co., by reason of his assignment to Navos of his three-fourths interest in the business of the partnership.

The facts, as we glean them from the records, appear to be as follows:

On the 5th of November, 1885, Manual Navos conveyed the above described property to Henry Rougognac by authentic title, and for the expressed consideration of $1000 cash in hand paid and the assumption of the October instalment of the rent, $229 16, then past due. On the 16th of the same month Rougognac conveyed the same property to Bernard Maylie for the expressed consideration of $1400, evidenced by two promissory notes of the vendor—one for $400 and another for $1000—which were surrendered and canceled by the latter.

It appears from the evidence that, finding himself in embarrassed, if not insolvent circumstances, Navos felt it necessary to make some disposition of his property, and, possibly, with the view of satisfying *some* of his creditors. With this end in view, he proposed to make a sale to one or two different ones of his creditors, but they declined to purchase. He then advertised his property for sale in the newspapers, likewise without avail. He then made the conveyance to Rougognac. It appears that the latter obtained from Bernard Maylie a check of $1000 with which to make the payment of the purchase price, and it was used as cash in making that transaction with Navos. It further appears that, amongst others, Novos was indebted to Pierre Donnes in the sum of $700, evidenced by his promissory note, and that he had promised Donnes to pay the note if he would secure him a purchaser for his property. Stimulated, perhaps, by this inducement, he interviewed Rougognac and induced him to become the purchaser. Bernard Maylie was seen and influenced to put up the necessary amount of money to consummate the trade. But, in order to insure the collection of his note, Donnes placed it in the hands of Maylie with instructions to collect it out of the money to be paid to Navos for the property. So it transpired that after the act of sale to Rougognac was executed and signed, the check of Maylie was handed back to him endorsed by Rougognac, and he sent it to bank and had it cashed and handed the cash to Navos, and from the same he withdrew $700 and applied it to the payment of Donnes' note, and the balance of $300 was retained by Navos. Immediately afterwards Rougognac went into possession of the saloon and opened up a business.

In addition to this $1000 cash advanced, Maylie loaned Rougognac $400, in order to place him in funds with which to pay the arrearages of rent for the month of October, which he had assumed as a part of the purchase price, and the water and electric light bills. It was for these sums the two notes were executed in favor of Maylie, and they bear date November 6, 1885, the day after the sale to Rougagnac is dated, but the day it was *consummated.*

This transaction caused some comment and criticism among the creditors of Navos. Maylie became somewhat solicitous about the collection of the Rougognac notes, and the result was the execution of the *dation en paiement* of the 16th of November, 1885, and the surrender and cancellation of the notes.

Soon afterwards Navos returned to the saloon and resumed control, to all appearances, as before the sale to Rougognac, but really for Maylie.

A vast amount of testimony was taken in support of plaintiff's and intervenor's charges against the purported conveyances on the one hand, and in support of them on the other, and a comprehensive view of it all has left us under the conviction that the plaintiff has failed to make out his case.

It is evident, to our minds, that neither Maylie nor Rougognac were bound in any way for the payment of the debts due to the plaintiff.

There was no legal impediment existing to prevent Maylie loaning or Rougognac borrowing the $1000 with which he paid the purchase price to Navos. There was nothing to prevent Navos selling to Rougognac for cash, even though he were in insolvent circumstances to the knowledge of the purchaser at the time. R. C. C. 1986 ; 19 La. 594, Maurin & Co. vs. Rouquer.

A sale to one *not a creditor* must be considered as one made in the ordinary course of business, if made for an adequate consideration paid in cash. The fact that a portion of the purchase money was applied to the discharge of the vendor's debts will not vitiate it as an onerous contract. Such was the view taken of a transaction of this kind in Maurin vs. Rouquer.

It may well be that the act of Navos, in applying $700 of the purchase money to the payment of Donnes, was an unlawful preference given to him over other creditors, and his failure to apply the remaining $300 that he received to the satisfaction of other debts he owed, was a fraud on their rights. But neither can afford just ground for the resolution of the sale to Rougognac on a charge of simulation, without the further proof that he was but a party interposed to take title *only*, for the purpose of secreting it from the creditors of Navos.

There is no proof in the record to show that Navos was not really indebted to Donnes in the sum of $700, or that that sum was not paid to him in satisfaction of his note. It is undenied that Maylie advanced to Rougognac $1000 with which to pay Navos and $400 to enable Rougognac to pay rent and other bills. The conveyance to Maylie squared the transaction all round. It may be true that this would have been a fraudulent transaction *if Rougognac had been indebted to any one else.* But from the evidence we are authorized to assume that Maylie was the only one ; hence, there was no impediment to the conveyance.

It was, perhaps, the original purpose of Navos to make a simulated sale to Rougognac, but for some reason that purpose was altered and the sale, as described, was entered into.

There can be no reasonable doubt in regard to Maylie having.

expended $1400 in cash in these transactions. and that Navos was the recipient of $1000 thereof, the most of which was employed by him in discharge of debts.

The prayer of the plaintiff's petition is that said acts "be decreed to be fictitious, false, simulated and fraudulent, and that same may be set aside and held for naught."

Under the state of facts above recited his prayer cannot be granted. These transactions may have been made for an inadequate price; may have been intended, on the part of Navos to defraud the plaintiff and other creditors, and may have affected them injuriously, but in the total absence of any appropriate allegation or prayer, such relief was improperly awarded the plaintiff in the lower court.

The judgment is erroneous in so far as it annuls the sale and *dation en paiement* complained of, recognizes a lien and privilege on the property therein described, and condemns Bernard Maylie for the payment of plaintiff's demands, and in these particulars it should be amended.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to reject and disallow the plaintiff's demands for the annulment of the sale from Manuel Navos to Henry Rougognac, and the *dation en paiement* from Henry Rougognac to Bernard Maylie, so as to disallow his demand for personal judgment against the latter for the debt of Navos, and so as to reject his demand for the recognition of his mechanic's lien on the property included in said acts, and to dissolve his injunction and sequestration.

It is further ordered, adjudged and decreed that in all other respects said judgment be affirmed, and that the cost of appeal be taxed against the plaintiff and appellee.

---

### ON APPLICATION FOR REHEARING.

The plaintiff and intervenors apply for a rehearing on the ground, mainly, that if they "have failed to prove the *simulation*," their suit should be maintained "under the prayer for the annulment of the contract, and for general relief."

Our opinion quotes the prayer relied on. We considered that their *sole* reliance was upon proof of the charge of simulation, as there was no alternative allegation or prayer that if the conveyances were not simulated, they were fraudulent. Such demands have been considered as not inconsistent. In the absence of such alternative prayer, we thought it out of our power to grant such relief. But, indeed, if such

a demand and prayer had been specially made, it could not have been determined by us because of our want of jurisdiction, the plaintiff's monied demand being less than $2000, and that being the test in a purely revocatory action.

Their application must, therefore, be refused.

The defendant, Maylie, complains that he was not relieved from the cost of the lower court, because the judgment of that court was, as to him, reversed entirely.

In this we think he is clearly correct, and our judgment should be amended.

It is therefore ordered, adjudged and decreed that our former judgment and decree be so amended as to tax the plaintiff and appellee with all the cost in the court *a quo* appertaining to the defendant and appellant, Maylie, and that as thus amended it remain undisturbed.

Rehearing refused.