THOMPSON, J.
 

 These consolidated eases present appeals from two judgments rendered on different dates in the same suit, sustaining-exceptions of no cause of action filed separately by the three defendants.
 

 On March 11, 1911, the defendant Irwin purchased from Ernest Clapp some 8,000 acres of land at the price of 873,260.47, which was paid by the assumption on the part of Irwin of a debt of said Clapp operating as a mortgage on the said lands.
 

 On the same day by separate instrument Clapp and Irwin entered into an agreement by which Irwin obligated himself to pay Clapp one-fifth of the balance of the amount realized by him (Irwin) from the development and disposal of said land and timber thereon after all the said lands and timber had been disposed of, and after the said Irwin had been reimbursed all amounts paid out by him on the mortgage debt assumed by
 
 *923
 
 him and for any expense incurred in the development or disposal of the lands and timber, together with interest on each and all of the amounts so paid out, at the rate of 6 per cent, per annum.
 

 On February 13, 1919, .Clapp assigned all his rights under said contract to James G. Gravely, and the latter on April 21, 1920, sold all his rights to the plaintiff, Chapman.
 

 On . September ' 17, 1914, Irwin sold the land to Wirt H. Cook, and Cook on July 7, 1916, made a deed to William O’Brien.
 

 The petition does not allege what amount was recited in the two deeds just mentioned as the consideration of the sales, nor does it. appear that the timber on the land was reserved to Irwin.
 

 But it is alleged that Irwin, ignoring the two deeds, on January 17, 1920, sold all the timber on the land to J. Y. Stinson Hardwood Company for $225,000.
 

 The petition alleges that the sales of the land, from Irwin to Cook and from Cook to O’Brien, were fraudulent and simulated, and were not intended to convey and did not convey the title to the said land, but were executed and placed on record for the purpose of enabling said Irwin to evade .his contract with Clapp and to avoid payment to said Clapp of one-fifth of the net profits from the purchase and sale of said lands and timber. That there was no true consideration for said conveyances.
 

 It is alleged that, after deducting all .amounts paid out by Irwin, including interest thereon, there remained a net profit from the sale of the timber of $112,822.91, the one-fifth of which due the plaintiff is $22,564.58.
 

 It is further alleged that, because of the fraudulent and simulated transactions of said Irwin, petitioner is entitled to receive, not only one-fifth of the net profits from the sale of the timber, but also one-fifth of the value of the land after the timber is removed. That the value of the land without the timber is $200,892.25, and one-fifth thereof would be $40,178.45.
 

 The prayer is for judgment declaring the sales, from Irwin to Cook and from Cook to O’Brien, to be fraudulent and simulated, and that Irwin be decreed to be the owner of said lands subject to the sale of the timber.
 

 Further, that there be judgment against Irwin for $62,743.03 with legal interest from January 17, 1920.
 

 In "the alternative, if the court should hold that plaintiff is not entitled to one-fifth of the value of the lands, then plaintiff prays for judgment for $22,564.58, with interest-; this being one-fifth of the net amount received from the sale of the timber.
 

 The defendants were all nonresidents, and were cited through curators ad hoc.
 

 An attachment was issued against Irwin, and the lands which form the subject of the suit were seized.
 

 The defendant Irwin through counsel first filed an exception to the jurisdiction of the court ratione personas, together with a motion to dissolve the attachment on the ground that the indebtedness claimed by the plaintiff was unliquidated, and that from the nature of the demand any amount that may be fixed must necessarily be 'conjectural and could not serve as a basis of an oath for attachment.
 

 The exception to the jurisdiction was properly overruled.
 

 The motion to dissolve the attachment was filed at the same time, and was included without reservation in the plea to jurisdiction. The defendant thereby submitted to the jurisdiction.
 

 A defendant cannot disclaim or deny jurisdiction ratione personee and at the same time and in the same exception and without reservation invoke the action of the court on other matters involved in the suit. State v. Buck, 46 La. Ann. 656, 15 So. 531. Martel Syndicate v. Block, 154 La. 870, 98 So. 400.
 

 
 *925
 
 The petition alleges a definite and fixed net amount received by the defendant, one-fifth of- which was due plaintiff under the terms of the contract attached to the petition. The amount claimed is therefore susceptible of definite proof. The motion to dissolve the attachment on the ground stated was properly overruled.
 

 The exceptions of no cause of action filed by all three of the defendants are identical in character, and are supported by the same contention.
 

 It is argued that the prayer of the petition and the nature of the relief demanded characterizes
 
 the
 
 action as revocatory, and, applying the rules peculiar to such an action as defined in the Civil Code and the established jurisprudence, the petition is fatally defective in that it fails to allege the insolvency of Irwin, knowledge of such insolvency in Cook and O’Brien, and injury to the plaintiff.
 

 These are unquestionably sacramental allegations necessary to be made in an action purely revocatory. The error into which learned counsel has fallen is in assuming that the present suit is such an action.
 

 The petition alleges that the sales of the land were fraudulent and simulated and were not intended to convey and did not convey the title to said land, but were executed and placed on record for the purpose of enabling said Irwin to evade his said' contract with Clapp, and further that there was no consideration paid for said land.
 

 We are not of the opinion that the allegations of plaintiff’s petition stamp his action as revocatory. It is rather to be deemed an action in simulation.
 

 In Hibernia Bank & Trust Co. v. Louisiana Ave. Realty Co., 143 La. 969, 79 So. 554, 556, the court said:
 

 “If we now consider the exceptions in so far as they affect plaintiff’s secondly declared ground of action, namely, that the so-called sales and transfers are mere shams and simulations, it is evident that said exceptions are not sustainable under our law.
 

 “A simulated contract is one which, though clothed in concrete form, has no existence in fact, and is only a myth. It may at any time and at the demand of any party in interest be declared a sham, and it may even be ignored by creditors o;E the apparent vendor.”
 

 The revocatory action proper presupposes that some consideration was paid for the property, whereas an action in simulation is founded on the supposition that the attacked transaction was without consideration, a mere sham, having the form or color of reality, but without substance — a fraudulent sham.
 

 In such an action, while it is necessary to allege and to prove injury, the fact of insolvency is not an essential element to be either alleged or proved.
 

 It must be observed that the relation of the defendant Irwin to Clapp was in the nature of that of trustee. He owed to Clapp the duty of honestly developing and disposing of the land and timber, and of accounting to Clapp for his share of the net profits. Obviously Irwin was not authorized under his contract to make a gratuitous disposition of the property. If, as alleged, he made a sham sale of the land with a view and for the purpose of evading his obligation to Clapp, he violated his trust and committed a fraud against the rights of Clapp and his assignees.
 

 The general rule is that all the property of a debtor is the common pledge of all his creditors, and, before a real but fraudulent disposition of the debtor’s property can be set aside, the creditor must allege and prove insolvency as well as injury.
 

 In this case, however, the plaintiff was not a general creditor of Irwin. He was a particular creditor quoad the lands and timber, and entitled to be paid out of the profits derived from an honest and real disposition of such property. -
 

 
 *927
 
 If the allegations of plaintiff’s petition are true, then the price received from the timber more than reimbursed Irwin, and left an amount due plaintiff as his share of the profits. And, if the sale of the lands was a sham and Oook and O’Brien paid no consideration for them, then unquestionably plaintiff is entitled to have such lands uncovered from the cloud and returned to. Irwin, to the end that plaintiff may obtain his proportion of their value above the deductions to which Irwin may be entitled.
 

 Hence we conclude that the allegations of the petition are sufficient to show'a cause of action against all the defendants, and that the suit was improperly dismissed.
 

 The judgments appealed from are set aside, the exceptions are overruled, and the case is remanded to the district court to be proceeded with according to law. The costs of appeal to be paid by defendants and all other costs to await the final disposition of the case-