## LOWE v. GARRIGA et al. *

### No. 5096.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1935.

R. D. Watkins, of Minden, for appellant.

Land & Kinnebrew, of Homer, for appellees.

MILLS, Judge.

Plaintiff, a merchant of Minden, La., on March 11, 1932, secured and recorded a judgment against A. Garriga on open account in the amount of $808.88, with interest and cost.

On June 12, 1933, E. S. Toadvin proceeded against the same defendant via executiva upon a mortgage note for $4,000, less a credit of $500, and secured an order for the seizure and sale of 302 acres of land in Claiborne parish. Whereupon, the judgment creditor brought this action in the district court of Claiborne parish, alleging that the note and mortgage, importing confession of judgment, sought to be executed upon by Toadvin were part of a fraudulent scheme concocted by Garriga and Toadvin to defeat the collection of his judgment, and were pure simulations; and, in the alternative, that the transaction was one in fraud of creditors, which should be annulled and set aside.

An injunction was prayed for, a temporary restraining order stopping the sale was granted, and a rule nisi issued.

Defendant Toadvin denied plaintiff's allegations, reserved his right to sue for damages, and pleaded the prescription of one year in bar of the action. Garriga made no appearance, but on the trial of the rule it was agreed that the answer filed should be considered as an answer on behalf of him and the sheriff. It was further agreed that the trial of the rule should be considered as a trial on the merits, and the whole case disposed of.

After due hearing, there was judgment sustaining the plea of prescription and dismissing the suit. Plaintiff took orders of appeal to the Supreme Court, but there concurred in the suggestion of Toadvin, appellee, that that court was without jurisdiction as the amount in dispute does not exceed the sum of $2,000; whereupon, the Supreme Court, without further proceeding, transferred the appeal to this court.

Here our jurisdiction is questioned. Had the Supreme Court made the transfer otherwise than by consent, we would consider the matter closed, but as jurisdiction ratione materiæ cannot be conferred by consent, we are constrained to consider the matter.

■ It is well settled that in a revocatory action the amount of the debt sought to be collected controls the forum of appeal, whereas in an action in simulation the value of the transaction sought to be annulled governs. Loeb v. Arent, 33 La. Ann. 1085; Livingstone v. Hardie, 41 La. Ann. 311, 6 So. 129; Pochelu v. Catonnet, 40 La. Ann. 327, 4 So. 74; Godshaw v. Judges, 38 La. Ann. 643; Cusachs v. Dugue, 113 La. 261, 36 So. 960.

In the Loeb Case the court said: "The test of our jurisdiction is to be found in the nature of the relief sought by plaintiffs, and the pecuniary amount of the effect which may result therefrom to appellants."

■ Applying this measure to the present case, it appears that appellant is only interested in the mortgage securing the note, and to the extent that it may prime his lien and privilege resulting from the recordation of his judgment, or to the amount of approximately $900. We think this is the jurisdictional amount and brings the appeal properly before this court.

On the merits plaintiff relies entirely upon statements made by Toadvin in conversation. He claims that in the latter part of November, 1931, before any suit was filed by him on the Garriga account, Toadvin, in plaintiff's store and in the presence of Harvey Reagan and J. C. Anderson, in response to an inquiry, said that so far as he knew Garriga owed no one but plaintiff, and that his land was unencumbered. Reagan and Anderson testify to the same effect, and Reagan says further, that later that night Toadvin told him that, " * * Mr. Lowe was fixing to tie up Garriga, and says, I am going to fix that where he can't get it."

S. S. Gillespie, an employee of the Standard Pipe Line Company, says that, in his blacksmith shop a few days after the mortgage was given, Toadvin told him he had Garriga tied hand and foot, and was going to beat Lowe.

Toadvin vehemently denies that he made these statements. He shows that his brother-in-law, Garriga, was a hard-working but unsuccessful farmer; that he had been extending him financial help without repayment for a number of years. He attempts to show by his testimony, that of his bookkeeper, C. L. Batton, and Garriga, and by filing in evidence numerous checks and the purported account kept by Batton, that at the time the mortgage was given Garriga was indebted to him in the principal sum of $3,800, which, with interest, exceeded the amount of the note. The account filed, covering the years 1925 to 1931, inclusive, is suspiciously clean, and though admittedly kept by the same man, suspiciously uniform in handwriting, and apparently

all written with the same pencil. However, practically every item appearing on the account is backed up by a check filed in evidence. All but nine checks, aggregating $536.88, are made payable to cash or to some other party than Garriga. Both defendants testify that Garriga got the amount of all the checks payable to cash, and that he got practically all of the fertilizer that was paid for by others, and one mule of three paid for by another check. This evidence, beyond the nine checks for $536.88, is not very convincing. It cannot be disputed that Garriga received the amount of the checks payable to him. There was a real consideration of at least $500 for the note and mortgage.

"A simulated contract is one which, though clothed in concrete form, has no existence in fact and is only a myth." Hibernia Bank & Tr. Co. v. Louisiana Ave. Realty Co., 143 La. 962, 79 So. 554, 556.

"The revocatory action proper presupposes that some consideration was paid for the property, whereas an action in simulation is founded on the supposition that the attacked transaction was without consideration, a mere sham, having the form or color of reality, but without substance—a fraudulent sham." Chapman v. Irwin, 157 La. 920, 103 So. 263, 265.

█ Considering the facts in this case, that there was at least a partial consideration for the transaction, in the light of the above definitions, it is apparent that plaintiff must recover, if at all, on his alternative plea, or revocatory action.

To this defendant has pleaded, in bar, the prescription of one year.

The revocatory action brought solely on the ground of preference given to one creditor over another, must be brought within one year of the date of the contract sought to be avoided. Civil Code, art. 1987.

A revocatory action brought for other causes than preference is limited to one year from the time the attacking creditor has obtained judgment on his debt against the debtor. Civil·Code, art. 1994; Olivier, Voorhies & Lowrey v. Majors, 133 La. 764, 63 So. 323.

█ In the present case, the suit was filed July 29, 1933. The instruments sought to be annulled are dated December 7, 1931. Plaintiff obtained judgment on his account on March 11, 1932; therefore, this action,

being revocatory, is barred, however construed, by the prescription of one year.

We find the judgment of the lower court correct, and it is accordingly affirmed.