McCALEB, Justice.
 

 The Louisiana State Bar Association, appearing through the Committee on Professional Ethics and Grievances, instituted this proceeding seeking' the disbarment of Delvaille H. Theard for professional misconduct. It is charged, in substance, that, on January 2nd 1935, while engaged in the active practice of law in the city of New Orleans, respondent forged, with intent to defraud, the signatures of Olga Wexler and Alys Senn to a promissory note for $20,000; that he thereafter transferred the note for valuable consideration to a Mrs. Annie W. Forsyth and that,' in furtherance on his unlawful acts, he paraphed
 
 *331
 
 the note in his capacity as a Notary Public in order to make it appear that it was ■‘an authentic mortgage note. It is averred
 
 that, in
 
 conformity with the rules of this' ■court, the Committee on Professional Ethics
 
 and
 
 Grievances has conducted an investigation; that a hearing was had on the charges
 
 in
 
 the city of New Orleans on June 5th and 6th 1952, at which time respondent admitted that he had apparently forged the signatures of Olga Wexler and Alys Senn and had uttered the forged instrument but that he had no recollection whatever of the transaction-nor with respect to the disposition of the money he obtained from Mrs. Forsyth.
 

 It is further 'alleged that, after hearing the evidence, the Committee was of the opinion that respondent had been guilty of a violation of the laws of this state relating to professional misconduct and that he had wilfully transgressed the rules of professional ethics to such an extent that he -was morally unfit to continue the practice of law. Wherefore the suit.
 

 In due course, respondent appeared and excepted to the petition on several grounds. These exceptions have been argued and are presently submitted for our decision.
 

 The first exception assails the capacity, authority and power of the Louisiana State Bar Association to institute the action. It is based on the idea that the Association, a non-trading corporation organized under Act 254 of 1914, LSA-R.S. 12:101 note, cannot appear through a Committee on Professional Ethics and Grievances but only by authority of its Board of Governors.
 

 There is no merit in the point. By Section 11 of Article XIII of the Articles of Incorporation of the Association, it is specifically provided that all suits for disbarment “shall be brought in the name of the Louisiana State Bar Association * *” and Section 4 of said Article makes it the duty of the Committee on Professional Ethics and Grievances to institute the suit. These are the rules of this Court, see Rule XVII. Hence, no special authority from the Board of Governors is essential to enable the appearance of the Association as complainant.
 

 The second exception is predicated upon a similar contention — i. e., that the petition cannot stand because it is not signed by an officer of the Association. The answer is that this court, under its rule making power, has ordained that the suit be filed in the name of the Association by the Committee on Professional Ethicá. and Grievances. No other authority is required.
 

 The third and fourth exceptions of respondent may be considered together. They are exceptions of no right or cause of action and to the jurisdiction of the court based on the single proposition that, since respondent has adduced proof at the hearing (which was held in accordance with Sections 3 and 4 of Article XIII of
 
 *333
 
 the Articles of Incorporation of the Louisiana State Bar Association),
 
 [1]
 
 showing that he was afflicted with a mental illness at the time of his misconduct, the proceedings should be summarily dismissed.
 

 The contention does not impress us. It is plain fallacy, insofar as it is directed, against our jurisdiction, as Section 10 of Article
 
 7
 
 of the Constitution vests the court with exclusive original jurisdiction “* * * in all disbarment cases involving misconduct of- members of the bar * Respondent is charged with misconduct and his alleged mental illness cannot effect an ouster of the power of the court to hear the case.
 

 The exception of no right or cause of action is addressed to the asserted lack of probable cause on the part of the Committee in filing the proceeding in view of respondent’s showing of insanity at the time of the commission of his misdeeds. But the mere fact that respondent offered the sole defense of insanity at the hearing affords no reason for this court to deduce that the committee was without probable cause or that the petition does not state a right or cause of action. On the contrary, even if insanity at the titilé of the misconduct could be regarded as a le-~ gal ground for denying disbarment, WeP doubt that it can be pleaded on an exceff-' tion of no cause of action, notwithstanding that evidence in support of the plea has been offered under a so-called • exception of no right of action. See Duplain v. Wiltz, La.App., 174 So. 652 and cases there cited. Manifestly, insanity pleaded in ordinary civil actions ag a bar to legal responsibility is a matter of defense, triable, only on the merits, .so that the plaintiff is .afforded an opportunity to rebut the evidence tendered in support of the plea.
 

 But, be this as it may, we do not view the mental deficiency of a lawyer at the time of his misconduct to be a valid defense to his disbarment. Strangely enough, counsel for respondent apparently takes it for granted that, because evidence has been produced indicating that respondent was probably suffering from amnesia and other mental deficiencies at the time of his misdeeds,
 
 [2]
 
 his insanity (which we will concede for purposes of this discussion) operates as a complete bar to this proceeding.
 

 
 *335
 
 We think that counsel is mistaken in his assumption. While mental defects rendering an offender of the law incapable of distinguishing between right and wrong exempt him from criminal responsibility LSA-R.S. 14:14, or even may excuse him from civil liability for a tort, Yancey v. Maestri, La.App., 155 So. 509, it does not follow that disordered reason will exonerate a lawyer from the consequences of his professional misconduct. One of the qualities requisite for admission to the bar is that the applicant be of good moral character. When a lawyer has committed peculations, forgeries and breaches of trust, he violates the oath he has taken to demean himself honestly in his practice and the good character he possessed no longer exists. And it will not do for respondent to say that he was suffering from a mental aberration or amnesia depriving him of the ability to distinguish between right and wrong. In disbarment, unlike criminal prosecution or a civil suit for recovery of money based on an offense or quasi offense, consideration of the interest and safety of the public is of the utmost importance for, whereas it may not be humane to punish by confinement to prison one who labored under the inability to understand the nature of his wrongful acts, it is quite another matter to permit such a person to continue as an officer of the court and to pursue the privilege of engaging in the honorable profession of counsellor-at-law when he, by his misconduct, has exhibited a lack of integrity and common honesty. And in our opinion it matters not whether the dishonest conduct stems from an incapacity to discern between right and wrong or was engendered by a specific criminal intent.
 

 The Supreme Court of Illinois in Re Patlak, 1938, 368 Ill. 547, 15 N.E.2d 309, 312, 116 A.L.R. 627, had occasion to consider insanity as a defense to disbarment. In denying the plea, the court sagaciously observed:
 

 “While insanity proved is a defense to a criminal charge, yet a disbarment proceeding is for more than the single purpose of punishment. There is also the even more important purpose of protecting the public from unscrupulous and dishonest lawyers. Though a man be shown to be insane, the public have a right to protection against his activities in the practice of law, particularly when the symptoms of his insanity include a penchant for keeping the money of others without rendering services or account therefor.”
 

 See also Annotation 116 A.L.R. 632 and cases there cited. .
 

 The fifth exception of respondent is that of prescription, laches and estoppel. It is asserted that, since the acts complained of occurred more than 17 years ago, the offense is so stale that it would be inequitable and unjust to permit the prosecution of the proceeding and, further, that
 
 *337
 
 respondent would be highly prejudiced in defending the suit after the passing of such a great length of time.
 

 The exception cannot be sustained. Our law of prescription is purely statutory and the fact that a long time has elapsed between the commission of the acts and the bringing of the charges does not, of itself, provide a just ground for dismissing the suit. Indeed, it appears that respondent was confined to an insane asylum for several years and that he was under a judgment of interdiction from June 1941 until May 7th, 1948, during which time the Com • mittee was unable to act. If respondent has been prejudiced by the delay, this is a matter which can be shown on the merits of the case.
 

 The suggestion that the Association is estopped by its conduct in certifying respondent as a member in good standing, for 11 years following 1941, is not well taken for the reason that all persons licensed to practice law in this State are considered, upon the payment of annual dues, to be active members in good standing of the Association until they have either been disbarred or suspended.
 

 The last exception is actually a motion to strike paragraphs VII and VIII from the petition on the ground that they contain mere conclusions of the pleader and do not exhibit a fair and full disclosure of respondent’s defense as established at the hearing. The allegations complained of are that respondent acknowledged the forgery of the signatures of Olga Wexler and Alys Senn and that he admitted that he had used the proceeds of the check delivered to him by Mrs. Forsyth, in payment of the spurious mortgage note, for “high living”.
 

 We see nothing objectionable in these averments and know of no good reason why they should be expunged. They are not conclusions of the pleader, as counsel contends; they are allegations of fact which can be readily admitted or denied in an answer, as the case may be.
 

 The exceptions of respondent are overruled and he is given ten days from the date of this decree to file his answer to the petition for disbarment.
 

 [1]
 

 . See In re Armstrong, 205 La. 67, 16 So. 2d 908.
 

 [2]
 

 . Incidentally, the peculations involved thousands of dollars belonging to his clients and others extending over a considerable period of time. In the petition, the charge has been limited to a single instance of forgery and uttering. However, counsel for respondent introduced in evidence newspaper clippings and other documents relative to the public scandal and agitation attendant to the discovery of respondent’s embezzlements, forgeries and other breaches of trust, his arrest and subsequent incarceration in a sanitarium for mental diseases where he remained for a long time.