## THEARD *v.* UNITED STATES.

No. 68. Argued December 13, 1956.—Decided June 17, 1957.

*Delvaille H. Theard* argued the cause and filed a brief *pro se.*

*Edward H. Hickey* argued the cause for the United States. With him on the brief were *Solicitor General*

*Rankin, Assistant Attorney General Doub* and *Paul A. Sweeney.*

*James G. Schillin* filed a brief for the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association supporting the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Because of petitioner's disbarment by the Supreme Court of Louisiana, the United States District Court for the Eastern District of Louisiana struck him from its roll of attorneys, and the Court of Appeals for the Fifth Circuit affirmed the order. 228 F. 2d 617. The case raises an important question regarding disbarment by a federal court on the basis of disbarment by a state court and so we granted certiorari. 351 U. S. 961.

A proceeding for disbarment of a lawyer is always painful. The circumstances of this case make it puzzling as well as painful. The facts are few and clear. It is undisputed that petitioner, in 1935, forged a promissory note and collected its proceeds. Criminal prosecution and action for disbarment were duly initiated but both were aborted because the petitioner was "suffering under an exceedingly abnormal mental condition, some degree of insanity" at the time of this behavior, to such a degree that he was committed to an insane asylum and was under a decree of interdiction until 1948. Years after, criminal prosecution was unsuccessfully revived, *State* v. *Theard,* 212 La. 1022, 34 So. 2d 248. The disbarment proceedings, which led to the order in the federal court now under review, got under way in 1950 and the Supreme Court of Louisiana, acting on the findings of a committee of the Louisiana State Bar Association, overruled exceptions to the petition for disbarment. In so doing, the court met the plea of insanity against the claim

of misconduct with the statement that it did not "view the mental deficiency of a lawyer at the time of his misconduct to be a valid defense to his disbarment." *Louisiana State Bar Association* v. *Theard,* 222 La. 328, 334, 62 So. 2d 501, 503. The next year, "after issue had been joined," the Supreme Court of Louisiana appointed a Commissioner to take evidence and to report to that court his findings of fact and conclusions of law. The Commissioner did so and reported to the Supreme Court this fact that we deem vital to the issue before us: "It must then, from the record, be held that the respondent was suffering under an exceedingly abnormal mental condition, some degree of insanity." 225 La. 98, 104, 105, 72 So. 2d 310, 312. The Commissioner deemed himself, however, bound by "the law of the case" as announced by the Supreme Court in 222 La. 328, 334, 62 So. 2d 501, 503, *supra,* according to which it was immaterial to disbarment that the petitioner "was probably suffering from amnesia and other mental deficiencies at the time of his misdeeds." *Ibid.* The Supreme Court of Louisiana in its second decision approved the Commissioner's view about "the law of the case," and added that, were the doctrine otherwise, it would not change its previous ruling. 225 La. 98, 108, 72 So. 2d 310, 313.

The state proceedings thus establish that petitioner was disbarred in 1954 for an action in 1935, although at the time of the fateful conduct he was concededly in a condition of mental irresponsibility so pronounced that for years he was in an insane asylum under judicial restraint. The proceedings also establish that as an active practitioner for six years preceding disbarment, after recovering his capacity, including the argument of thirty-six cases before the Louisiana Supreme Court and the Court of Appeals for the Parish of Orleans, no charge of misconduct or impropriety was brought against him.

It is not for this Court, except within the narrow limits for review open to this Court, as recently canvassed in *Konigsberg* v. *California,* 353 U. S. 252, and *Schware* v. *Board of Bar Examiners,* 353 U. S. 232, to sit in judgment on Louisiana disbarments, and we are not in any event sitting in review of the Louisiana judgment. While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route. The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included. The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court. The matter was compendiously put by Mr. Justice Cardozo, while Chief Judge of the New York Court of Appeals. " 'Membership in the bar is a privilege burdened with conditions' (*Matter of Rouss,* [221 N. Y. 81, 84, 116 N. E. 782, 783]). The appellant was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465, 470–471, 162 N. E. 487, 489. The power of disbarment is necessary for the protection of the public in order to strip a man of the implied representation by courts that a man who is allowed to hold himself out to practice before them is in "good standing" so to do.

The rules of the various federal courts, more particularly the District Court which disbarred this petitioner, have provisions substantially like the present Rule 8 of this Court dealing with disbarment. "Where it is shown to the court that any member of its bar has been disbarred from practice in any State, Territory, District, Commonwealth, or Possession, or has been guilty of con-

duct unbecoming a member of the bar of this court, he will be forthwith suspended from practice before this court. He will thereupon be afforded the opportunity to show good cause, within forty days, why he should not be disbarred." Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred. If the accusation rests on disbarment by a state court, such determination of course brings title deeds of high respect. But it is not conclusively binding on the federal courts. The recognition that must be accorded such a state judgment and the extent of the responsibility that remains in the federal judiciary were authoritatively expounded in *Selling* v. *Radford,* 243 U. S. 46. The short of it is that disbarment by federal courts does not automatically flow from disbarment by state courts. Of the conditions that qualify such a state court judgment, the one here relevant is that some "grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do." *Id.,* at 51.

We do not think that "the principles of right and justice" require a federal court to enforce disbarment of a man eighteen years after he had uttered a forgery when concededly he "was suffering under an exceedingly abnormal mental condition, some degree of insanity." Neither considerations relating to "the law of the case," cf. *Messenger* v. *Anderson,* 225 U. S. 436, 444, nor the temptation to get bogged down in the quagmire of controversy about the M'Naghten rule, require automatic acceptance by a federal court of the state disbarment in the circumstances of this case. The District Court apparently felt itself

so bound. This we deem error. The case must therefore be remanded to that court for disposition of the motion for disbarment under that court's Rule 1 (f) of its General Rules, in accordance with the standards defined in *Selling* v. *Radford, supra,* and this opinion.

*It is so ordered.*

THE CHIEF JUSTICE and MR. JUSTICE BLACK concur in the result.

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.