**In the Matter of the Disbarment of J. Harvey CROW.**

**No. 18299.**

United States District Court
N. D. Ohio, E. D.

Sept. 28, 1959.

On Motion for New Trial Oct. 30, 1959.

· Mr. Crow filed papers in his own behalf.

No attorneys of record representing Bar Associations.

JONES, District Judge.

This is a proceeding in disbarment under a rule to show cause why the respondent J. Harvey Crow should not be disbarred from practice in this court in view of the judgment of disbarment entered by the Court of Appeals for Champaign County, Ohio.

· For the purpose of considering the case, the pertinent chronology follows:

Upon certain specifications (11 in number) filed by a Committee of four, appointed by Judge Marion B. Owens of the Champaign County Common Pleas Court, on February 4, 1955, disbarment proceedings were instituted against Crow. Of the eleven specifications, six were abandoned at trial and a demurrer sustained as to another. Crow was found guilty under specifications 2, 4, 5 and 7 and judgment of disbarment was entered thereon on May 14, 1955. Respondent appealed to the Court of Appeals for Champaign County, which court, upon motion of Crow, entered a stay of execution of the Common Pleas judgment of disbarment, May 23, 1955.

On the 7th day of April, 1956, the Court of Appeals entered an order reversing the judgment of disbarment of the Common Pleas Court for Champaign County and remanded the case to the Common Pleas Court for the sole purpose of adopting findings of fact and conclusions of law. In re Crow Disbarment, Ohio App.1956, 135 N.E.2d 903. For earlier proceedings in the Court of Appeals reference is made to 135 N.E.2d 281 et seq.

On August 16, 1956, the Common Pleas Court for Champaign County, without further hearing and in response to the order of the Court of Appeals, filed its findings of fact and conclusions of law and entered an order of disbarment, without opinion. On appeal and motion of Crow the Court of Appeals stayed execution of the order of disbarment of the Common Pleas Court, August 20, 1956.

On the 24th day of May, 1957, upon hearing, the Court of Appeals affirmed the judgment of the Common Pleas Court of Champaign County and issued a special mandate to the Court of Common Pleas to carry its judgment into execution.

On December 18, 1957, respondent Crow appealed to the Supreme Court of Ohio, where "his appeal as of right was dismissed for the reason that no debatable constitutional question was involved". See 167 Ohio St. 165, 146 N.E.2d 846. On June 24, 1958, certiorari was denied by the Supreme Court of the United States, Crow v. Faulkner, 357 U.S. 927, 78 S.Ct. 1372, 2 L.Ed.2d 1371.

Thereafter, acting upon the certification of the final order of the Court of Appeals for Champaign County, under Rule 1(e) of the rules of this Court, a rule to show cause was issued, directed to the respondent Crow on November 4, 1957, requiring him to file his response on or before November 26, 1957.

In response to such rule, Crow filed, on November 26, 1957, what he designates an Application, setting forth a recital of matters before the Champaign County courts. Incorporated in the response there is a large number of affidavits purporting to challenge the veracity of witnesses regarding some of the charges laid in the specifications, and statements impugning the integrity and morality of several of the persons and officers participating in the disbarment proceedings. Thus the matter stood for hearing here.

Included in the statements and matter in respondent's Application are reviews of specifications abandoned and not made a part of the disbarment order. For clarification, the specifications upon which the disbarment proceeding was prosecuted and judgment entered are as follows:

"Specification No. 2

"That said J. Harvey Crow has been guilty of misconduct in his said office as attorney at law involving moral turpitude as follows:

"That during the month of March 1951, the said J. Harvey Crow acting as an attorney at law and as an officer of this Court did represent to and advise one Edith Butcher, at that time defendant in a divorce action brought by her husband, Elmer H. Butcher, in the Common Pleas Court of Tuscarawas County, Ohio, to make a fictitious reconciliation with her husband for the purpose of obtaining a dismissal of the action in Tuscarawas County and filing a divorce action on her part in the Common Pleas Court of Champaign County, Ohio, thereby effecting a change in jurisdiction; that the said J. Harvey Crow did take the said Edith Butcher in his automobile to Newcomerstown, Tuscarawas County, Ohio, and advised her husband, Elmer H. Butcher, that she desired a reconciliation on religious grounds and that she intended to return to the home of the said Elmer H. Butcher and live with him as his wife thereafter if he would dismiss the pending divorce action in Tuscarawas County against her; that he advised the said Edith Butcher to, through deceit and fraud, procure the presence of her husband, Elmer H. Butcher, in the City of Urbana, Champaign County, Ohio, and there-

upon to provoke a fight with her husband by taking his pocket book and car keys and then send for the said J. Harvey Crow so that he could witness a possible physical encounter between she and her husband if same ensued; that the said J. Harvey Crow did thereupon unlawfully and fraudulently procure a wallet containing money and other valuable documents and car keys, all of which were the property of said Elmer H. Butcher, and by unlawfully and fraudulently retaining possession of said property of said Elmer H. Butcher procured the signature of said Elmer H. Butcher to a separation and property settlement agreement with his said wife; that the said J. Harvey Crow having, through conspiracy with said Edith Butcher, obtained the dismissal of the divorce action in Tuscarawas County, Ohio, thereupon on April 2, 1951, instituted a petition for divorce on behalf of said Edith Butcher against Elmer H. Butcher in the Common Pleas Court of Champaign County, Ohio, in Case No. 22677; that during the pendency of said action in the Common Pleas Court and while said J. Harvey Crow was representing said Edith Butcher as an attorney at law and officer of this court, he persuaded the said Edith Butcher to accompany him to Cuyahoga County, Ohio, for immoral purposes; that at the hearing in Champaign County, Ohio, on the divorce petition he failed to advise this Court of his own misconduct and that of the plaintiff in said divorce action, but notwithstanding said misconduct, misrepresented to this Court that the said Edith Butcher was a woman of good moral character and was entitled to a divorce.

"Specification No. 4

"That said J. Harvey Crow had been guilty of misconduct in his office as an attorney at law involving moral turpitude as follows:

"That during January, 1952, the said J. Harvey Crow acting as an attorney at law and representing one Howard Heck in a divorce action against his wife, Leah Heck, in Case No. 22912 in this Court, called upon said Leah Heck and represented himself as an insurance claim adjuster and being otherwise unknown to the said Leah Heck; that the residence occupied by Howard Heck and Leah Heck had recently burned and upon obtaining Leah Heck's signature in the form of an endorsement on a check from an insurance company covering the fire loss, for the first time revealed his true identity as J. Harvey Crow, and advised Leah Heck that he represented her husband and was prepared to file a divorce proceeding against her, and endeavored to persuade her not to contest the action; that later, during the pendency of this said case, and after the attorney at law representing Leah Heck had advised her not to sign any papers whatsoever, without his knowledge and advice, and had informed J. Harvey Crow that such was the case, the said J. Harvey Crow procured one Howard Rust to visit said Leah Heck and again try to obtain her signature upon papers effecting the eventual settlement.

"Specification No. 5

"That said J. Harvey Crow has been guilty of misconduct in his said office as an attorney at law involving moral turpitude as follows:

"That during the year 1952 the said J. Harvey Crow acting as an attorney at law and officer of this Court, immediately prior to the trial of Case No. 22808, Chester Boitnott v. Mary Boitnott, in this Court, said J. Harvey Crow approached one of the witnesses in the case before trial, to wit, one Constance Edna Bright, and requested that she testify as to certain matters between the plaintiff and defendant and upon her refusal to testify as requested

by him threatened the said Constance Edna Bright with full exposure by the said J. Harvey Crow of alleged misconduct on her part.

"Specification No. 7

"That said J. Harvey Crow has been guilty of unprofessional conduct in his said office as an attorney at law involving moral turpitude as follows:

"That the said J. Harvey Crow, acting as an attorney at law, during the year 1953, obtained from one Eugene Fields, the sum of one hundred dollars ($100.00) allegedly for the purpose of posting a bond in the Municipal Court of Urbana, Ohio, on behalf of the said Eugene Fields and represented that said bond was required by said Municipal Court in order for the said Eugene Fields to retain his liberty; that no such bond had been required in said criminal proceedings against said Eugene Fields by said Municipal Court; that no such bond in the sum of one hundred dollars ($100.00) was ever posted by said J. Harvey Crow and the said J. Harvey Crow refused to return said one hundred dollars ($100.-00) to said Eugene Fields, and refused to account for the same."

Much of the attack upon the specifications (including those abandoned and dismissed) is directed to the alleged failure of the Committee members to investigate the facts by consulting, in advance, with persons whom the respondent states would know the truth; some of the affidavits relate to disqualification of one of the Judges in a case of Crow's, subsequent to the disbarment proceedings; there is attached a long list of persons who have filed a testimonial to the high standing and good professional and personal character of the respondent.

Other matters are attached to and recited in the respondent's Application which have little bearing on or relevancy to the question of whether Crow should be disbarred from practice in this Court.

■ A hearing in open court has been granted to the respondent; full consideration has been given the matters and reasons presented by Crow why he should not be disbarred from practice in this Court. In considering the matters presented by the respondent, the Court has undertaken within its capacity to sift the wheat from the chaff in the cumbersome, confusing and unclear record presented. We have been mindful of the requirements and principles set forth by the Supreme Court of the United States in Theard v. United States of America, 1957, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed. 2d 1342 and Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585.[1] The rule provided by these decisions in essence is that a member of the Bar of the District Court, admitted to practice in its Court solely on the basis of his license to practice in the State Court, may not be disbarred in the District Court summarily upon the certification of the member's disbarment by judgment of the State Courts. He is to be given something more than a perfunctory hearing; not, as I understand the decisions a trial de novo, nor a review of the State Court judgment as upon appeal. It is my opinion that this Court has fully complied with the principles laid down in those decisions and the hearing given here is in accord with and satisfies the Supreme Court rule as announced in Theard v. United States and Selling v. Radford, supra.

In sum, the written response of the respondent Crow is almost entirely devoted to the alleged lack of credibility of everybody connected with the prosecution of the proceedings against him.

[1] It appears however that the Supreme Court of the United States, on June 1, 1959, Misc.Docket 594, in effect overruled these cases by disbarring Crow from practice in the Supreme Court upon an order to show cause to which he had filed a return,—without a hearing and without opinion except dissenting paragraphs by Justice Douglas, concurred in by Justice Black. 359 U.S. 1007, 79 S. Ct. 1152, 3 L.Ed.2d 1025.

What of the findings and conclusions entered by the Common Pleas Court and adopted and affirmed by the Court of Appeals? They sustain specifications 2, 4, 5 and 7. Certainly, if the matters charged in these specifications were presented to and believed by the county court to be true, there was ample ground to justify the action of the Champaign County courts; there was no infirmity of proof, the weight and credit to be given it was for the trial court; except for his attack on the character, motives and credibility of witnesses used by the Committee, no showing has been made that respondent did not have every opportunity to present his case. In my opinion, a fair hearing and review were accorded him by the Common Pleas Court and the Court of Appeals. What was presented there would have been adequate for disbarment here.

As to the legal questions raised by respondent, he complains that his rights were denied him, to his prejudice, by lack of venue and by the appointment of a three-judge court to hear his disbarment proceedings; also, that an affidavit of prejudice was filed by him against one of the three judges, upon which no hearing and decision was made. It is sufficient to say that all these questions were considered and determined by the State Courts adversely to the respondent and, as I think, correctly so.

As to the attack upon venue, the challenge was made at the beginning of the hearing and determined adversely to the respondent; the judgment of the trial court upon that question was affirmed by the Court of Appeals. Not only do I think this question of law, like the others, is res adjudicata, but it is my judgment that it was correctly decided. The respondent concedes that the Champaign County Common Pleas Court had jurisdiction of the subject matter (the alleged misconduct took place there), and further concedes that if he resided in Champaign County, that Court would have had complete jurisdiction.

■ It is not reasonable to assert that because the attorney resides in another county he is not amenable to the jurisdiction of the court in the county where his alleged misconduct took place. To put it another way,—it would be doubtful whether respondent could have been brought to the Bar of the Cuyahoga County Court, where he lived, to answer for misconduct which occurred in Champaign County. An attorney's license to practice in Ohio is State wide and he may be called to answer for misconduct in any county of the State where it is charged that he committed unprofessional acts. This view of the matter is supported by consideration of Ohio Code, § 4705.02, and by the Court of Appeals' opinion in In re Crow Disbarment, 135 N.E.2d at page 903, supra. If the foregoing case is not res adjudicata as to this question, it is the law of Ohio and, under Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 is decisive.

■ As to respondent's complaint about three judges sitting in his case, it never has been questioned that the Chief Justice of the Supreme Court of Ohio may designate judges of one county to hold court in another county and it has been the practice at times for three judges from outside counties to be appointed to hear disbarment proceedings, as was done here.

■ The respondent contends that only the judge, or a single judge, is legally constituted to function in Champaign County because the law provides for only one judge for that County. The respondent did not raise the question before or during the trial in the State Court, in fact he acknowledged the power and propriety of appointing a three-judge court to hear his disbarment proceedings as stated in his Petition for Writ of Certiorari filed in the United States Supreme Court, on page 7, as follows:

> "The Chief Justice of the Supreme Court of Ohio, who is authorized to make such appointments, assigned three judges to hear this disbarment case, assigned for hearing April 18th, 1955."

I think it should be said that the power to have more than one judge sit is implicit in Code, § 2503.04 and Section 3 of Article 4 of the Ohio Constitution; and that it is inherent in the powers of the Chief Justice and the Common Pleas Judges to designate additional judges to assist. In re Quimby, 18 Ohio App. 142; In re Burch, 73 Ohio App. 97, 54 N.E.2d 803; State ex rel. Crotty v. Zangerle, 64 Ohio App. 511, 514, 29 N.E.2d 44; State ex rel. Hawke v. Le Blond, 108 Ohio St. 126, et seq., 140 N.E. 510. What conceivable right of the attorney is denied him and what possible prejudice could or would result?

■ As to the failure to hear the affidavit of prejudice filed by respondent against one of the three judges, it was disclosed at the hearing here that the affidavit was filed one year after the Common Pleas Court had entered an order of disbarment. See Section 2701.03, Ohio Revised Code. It further appeared at the hearing that even at that untimely date an opportunity was given to the respondent to present evidence in support of the affidavit but he failed to do so, because, as he asserted, the Chief Justice of the Supreme Court of Ohio then was without jurisdiction to hear him.

■ There was no rehearing required of the Common Pleas Court in the reversal and remand by the Court of Appeals; upon making of findings and conclusions in compliance with the order of the Court of Appeals, the Common Pleas Court re-entered its original order and judgment or disbarment. Thus the respondent's claim of a timely affidavit of prejudice in respect of this subsequent action of the trial court is wholly without merit. See In re Crow Disbarment, 135 N.E.2d at page 907 of the opinion.

It is my considered judgment that no right was unlawfully denied the respondent and that no prejudice resulted from the rulings of the State Courts on those questions and that due process was accorded him by the State Courts.

It recently has come to my notice that subsequent to the commencement of this proceeding, Crow has been cited for contempt by the Supreme Court of Ohio for refusal to comply with the disbarment order (that is, he continued to practice law despite the State Court's order of disbarment). Under the citation in contempt he was ordered to surrender his license to practice or be sentenced to serve six months in jail for such contempt. See Case No. 35825—Ohio Supreme Court, Journal No. 43, page 166. It is my understanding that Crow has surrendered his license to practice.

■ Having given full consideration to the matters contained in Crow's response to the order to show cause and to the statements made by him in the oral hearing had in open court, I am convinced that the respondent should not be permitted to practice further in this Court. Accordingly, an order of disbarment from further practice in this Court will be entered.

### Addendum.

It is thought appropriate to add hereto the chronology of an earlier disbarment proceeding against the respondent Crow. He was admitted to the Bar of the Court on August 20, 1929. On January 18, 1935 he was disbarred by the Court of Common Pleas for Stark County, Ohio. An order suspending him from practice in this Court was entered January 28, 1935 and on September 8, 1937 an order of disbarment was entered in this Court on the basis of the Stark County disbarment. On February 3, 1950, Crow was reinstated by the Stark County Court, and, on March 2, 1950, on the basis of the Stark County action, Crow was reinstated in this Court.

### On Motion for New Trial.

■ In the respondent's motion for a new trial there appears for the first time in these proceedings a charge that he was denied due process because the Champaign County Common Pleas Court required him to proceed with his trial there without giving him an opportunity to take depositions. (Paragraph 5 of his motion for new trial).

This charge was not included in his response (Application) to the rule to show cause issued by this court; nor was the charge presented orally or in respondent's briefs at the hearing of his case in open court. It appears, however, that he did assign such action by the trial court as error in his appeal to the Court of Appeals of Champaign County, and the following appears in the Per Curiam opinion of that court of May 8, 1957:

"We have carefully read and considered the record in its entirety, as well as the thirty-nine errors assigned as bases for the reversal of the judgment.

"As to none of the errors specified do we find reversible error to be shown by this record, nor do we find the judgment to be manifestly against the weight of the evidence.

"It is the unanimous conclusion of the members of this court that the judgment under review should be affirmed, and it is so ordered. Affirmed."

The respondent's charge here made was embodied in assignments of error Numbers 10 and 22 of the thirty-nine assignments referred to in the Per Curiam opinion. Thus, the charge introduced for the first time here, was considered and decided by that court on review.

The respondent made this same charge a basis for error before the United States Supreme Court in the disbarment proceedings in that Court. See 1(a) of "Questions Presented For Review." Petition for Writ of Certiorari in The United States Supreme Court. As noted in this court's memorandum of September 28, 1959, the United States Supreme Court, after consideration of his response to its rule to show cause, entered an order of disbarment from practice in that Court.

Surely, upon these facts as to the proceedings in the two courts mentioned above, the respondent has had due process. I can find no ground for granting a new trial and the motion accordingly is denied.