**In re Anonymous No. 63 D.B. 93**

Disciplinary Board Docket no. 63 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member,* August 17, 1994—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement from inactive status.

## I. HISTORY OF PROCEEDINGS

On January 25, 1993 [petitioner] filed a motion for waiver of requirements of section 89.279 of the Disciplinary Board Rules and Procedures. Petitioner filed a supplement to that motion on March 29, 1993. The Office of Disciplinary Counsel filed an answer to petitioner's motion on April 15, 1993 and on April 28, 1993 the Disciplinary Board of the Supreme Court of Pennsylvania denied petitioner's motion for waiver.

Petitioner filed a petition for reinstatement from inactive status and special reinstatement questionnaire on August 2, 1993. The matter was referred to Hearing Committee [    ], consisting of [    ], Esq., Chair, and [    ], Esq., and [    ], Esq., members.

A special reinstatement hearing was held on December 2, 1993 before [    ] Esq. On December 26, 1993 petitioner filed a brief to the Hearing Committee, and on January

12, 1994 Disciplinary Counsel filed a brief to the Hearing Committee.

The Hearing Committee filed its report on February 9, 1994, recommending petitioner's reinstatement to active status. On February 28, 1994 Disciplinary Counsel filed a brief on exceptions with the board. Petitioner filed an answer to the brief on exceptions on March 8, 1994. Oral argument on Disciplinary Counsel's exceptions was held on May 16, 1994 before a panel consisting of Thomas A. Leonard, who presided, Berle M. Schiller, and Leonard A. Sloane.

The matter was adjudicated at the June 22, 1994 meeting of the board.

## II. FINDINGS OF FACT

(1) Petitioner was born in 1937 and was admitted to practice in Pennsylvania in 1963. Petitioner has been inactive in Pennsylvania due to nonpayment of annual fees from 1973 to the present. Petitioner failed to pay his annual fee due to financial hardship. (N.T. p. 91.)

(2) Petitioner served as a civilian attorney for the United States Army in [A] from 1969 until 1991. (Stip. 4.) Petitioner has served in the same general capacity at Fort [B], [    ] from 1991 until 1993. (Stip. 7.)

(3) Petitioner is currently serving as a paralegal in the same office pending the outcome of these proceedings. (N.T. p. 103.)

(4) Following petitioner's transfer from [A] to Fort [B], petitioner altered a reimbursement voucher by adding

an "x" to a box indicating certain "real estate expenses." (Stip. 15.)

(5) When questioned about the additional "x," petitioner twice denied knowledge of its appearance. After being confronted again by his superior, petitioner admitted adding the "x." (Stips 20, 24, 27.)

(6) Petitioner's employer initiated an investigation, and referred information concerning the voucher incident to the United States Attorney for the Eastern District of [    ]. (Stips. 29, 31.)

(7) As a result of the investigation and the finding that respondent violated 18 U.S.C. §§287 and 1001 containing false claims and statements, petitioner was suspended from his employment starting November 2, 1992 for 45 days, which caused him to forfeit approximately $7,326 in pay and benefits. (Stip. 36.)

(8) The United States Attorney and petitioner agreed to petitioner's participation in a pretrial diversionary program for one year, including 100 hours of community service. (Stip. 32.) The United States Attorney did not bring formal charges, and petitioner therefore has no criminal record. Petitioner successfully completed the program. (Exh. ODC-34/ P-6.)

(9) Petitioner accepts that his acts with regard to the voucher were wrong, and he expresses remorse over the incident. (N.T. pp. 111-112.) He is unlikely to ever make such a falsification again. (N.T. p. 52.)

(10) Petitioner continues to possess a reputation as a truthful, honest and law-abiding person among persons who know him and are aware of the voucher incident. (N.T. pp. 44, 47.)

(11) At the time of the voucher incident, petitioner was under significant stress because his wife was suffering from diagnosed terminal cirrhosis of the liver. (N.T. pp. 111-112.)

(12) Petitioner has never been charged with a criminal offense greater than a parking ticket. (N.T. p. 75.) Other than the voucher incident, petitioner has never been disciplined for actions taken while employed as an attorney. (N.T. p. 74.)

## III. CONCLUSIONS OF LAW

Petitioner possesses the moral qualifications, competency and learning in the law necessary for admission to the bar in Pennsylvania, and therefore should be reinstated as an active member thereof.

## IV. DISCUSSION

The petitioner has the burden under Pa.R.D.E. 218(c)(3)(ii) to establish that he possess "the moral qualifications, competency, and learning in the law required for admission to practice in the Commonwealth." Petitioner has demonstrated that he possesses both the competency and the learning in the law necessary for admission. (See *e.g.,* N.T. pp. 70-71, 79-80, 82, 84.) Dis-

ciplinary Counsel does not dispute this. (Tr. oral arg. at 4.)

The only remaining issue is whether petitioner has met his burden on the issue of moral qualifications. Disciplinary Counsel has argued that he has not. The board concludes that he has, and therefore he is entitled to reinstatement.

A preliminary issue must be disposed of before proceeding. As an argument that petitioner lacked the necessary moral qualifications for readmission, Disciplinary Counsel implied that petitioner had engaged in the unauthorized practice of law while on inactive status. See Disciplinary Counsel brief to Hearing Committee at 17; Disciplinary Counsel brief on exceptions at 8. Disciplinary Counsel presents no evidence in either brief in support of the proposition.

The inference is capable of two different interpretations. Either petitioner was validly practicing law as a civilian attorney under federal authority but was engaging in the unauthorized practice of law under Pennsylvania statutes and precedents, or his federal employment depended on his Pennsylvania license, and his work from 1973 on would be nullified in Pennsylvania courts. The first argument fails because the federal program under which petitioner was employed was specifically authorized by an act of Congress, codified at 10 U.S.C. §1044, and the argument is therefore answered by the supremacy clause of the United States Constitution. (U.S. Const. Art. VI.)

The second argument also fails because petitioner was admitted at all relevant times until four weeks before the hearing to the United States Court of Military Appeals. As such, he was subject to his employer's regulations, which uncontradicted evidence before the board shows did not require active status in a state bar for currently employed attorneys until they were changed in September 1993. (Exh. P-5.) Furthermore, the board must assume his membership in the U.S.C.M.A. Bar would not be automatically affected by any change in his Pennsylvania status. *Theard v. United States,* 354 U.S. 278, 281-282 (1957).

The board therefore concludes that, in the absence of evidence to the contrary, no negative inference can be drawn concerning petitioner's continued employment as a civilian attorney with the Department of the Army despite his inactive status in Pennsylvania.

The main issue which Disciplinary Counsel raises is whether an incident involving the filing of forms relating to a reimbursement request for real estate expenses bars petitioner from reinstatement. The facts surrounding the incident are stipulated. After returning to the United States in 1991 following service in [A] as a civilian attorney for the army from 1969, petitioner altered a form by adding an "x" to a box. This box related to his application for reimbursement for certain expenses concerning the purchase of real estate upon his return. (Stip. 15.) When questioned about the "x," petitioner twice failed to acknowledge his responsibility for the alteration. (Stips. 22, 24.)

The alteration and petitioner's response to questioning led to an investigation, during which he did accept responsibility for adding the "x" and failing to truthfully account for its addition. (Stip. 27.) As a result of his conduct, the army suspended petitioner from his job without pay for 45 days, and referred the matter to the United States Attorney for the Eastern District of [    ]. (Stips. 29, 31.) The United States Attorney did not prosecute petitioner; rather petitioner accepted a pretrial diversion program which involved one year of probation and 100 hours of community service. (Exh. ODC-28.)

Petitioner successfully completed the program, and therefore has no criminal record as a result. (Exh. ODC-34/ P-6.) Thus this case differs markedly from a disciplinary proceeding based on a conviction, or a petition for reinstatement from a suspension or disbarment. The standard in Pa.R.D.E. 218(c)(3)(ii) differs from the one used in the latter cases, which is governed by Pa.R.D.E. 218(c)(3)(i). Suspended or disbarred attorneys under the latter provision must establish that they have the same qualifications as noted above, but they must establish such qualifications by "clear and convincing evidence." (Pa.R.D.E. 218(c)(3)(i).)

As the board noted that, as a consequence of how these two provisions are drafted, petitioners from inactive status have a "more lenient standard" to meet. *In re Anonymous No. 120 D.B. 88,* 6 D.&C.4th 1, 4 (1989). Petitioner addressed the moral qualifications part of this standard by presenting one character witness and his own testimony.

The character witness, [C], testified that he has known petitioner for approximately five years, (N.T. p. 41) and that petitioner's reputation for honesty and truthfulness was not changed by the real estate form incident. (N.T. pp. 44, 47.) [C] also testified that petitioner had expressed remorse over the incident and acknowledged that his actions were morally wrong. (N.T. p. 56.)

Both parties stipulated to petitioner's testimony that his actions were wrong, and that he is remorseful. (N.T. pp. 111-112.) Petitioner testified that he completed the federal pretrial diversion program, and that he forfeited $7,450 as a result of being suspended from employment. (N.T. pp. 117, 119.)

There are additional factors to be considered in this case. Petitioner also testified that his return with his family was due in part to the fact that his wife was diagnosed with and being treated for terminal cirrhosis of the liver. (N.T. p. 76.) The board therefore notes that petitioner was under stress as a result of his wife's illness at the time of the voucher incident. (N.T. pp. 111-112.)

Also weighing in petitioner's favor is his prior unblemished record. He has never had any criminal convictions, beyond the level of parking tickets. (N.T. p. 75.) Also, petitioner has never been sanctioned as an attorney before the voucher incident. (N.T. p. 74.)

In light of the foregoing factors, the board concludes that reinstatement to active status is warranted in the case of this petitioner.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that petitioner be reinstated to the practice of law.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Pa.R.D.E. 218(e).

Mr. Kerns, Ms. Lieber and Ms. McGivern did not participate in the adjudication.

## ORDER

And now, September 16, 1994, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated August 17, 1994, are approved and it is ordered that [petitioner] who has been on inactive status, has never been suspended or disbarred, and has demonstrated that he has the moral qualifications, competency and learning in law required for admission to practice in the Commonwealth, shall be and is, hereby reinstated to active status as a member of the bar of this Commonwealth. The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by the petitioner.

Mr. Justice Frank J. Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket no. 94 R1801, due to the unavailability of Mr. Justice Rolf Larsen, see no. 127 Judicial Administration Docket no. 1, filed October 28, 1993.