**In the Matter of Judith Ward MATTOX.**

**No. 22.**

United States Court of Federal Claims.

April 26, 1996.

---

ORDER

BRUGGINK, Judge.

On May 7, 1992, petitioner Judith Ward Mattox was suspended from the practice of law before this court. The suspension was to continue until Ms. Mattox complied with the requirements for reinstatement pursuant to Appendix F, Rule VI, of the Rules for The United States Court of Federal Claims ("RCFC") (hereafter, all subsequent references to rules within the RCFC are to Appendix F). Ms. Mattox applied for reinstatement on October 16, 1995. The matter was assigned to this judge pursuant to Rule VI(C). After considering petitioner's written and oral presentations, as well as the exhibits introduced at the hearing,[1] the petition is denied, without prejudice to reassertion at the expiration of one year.

## BACKGROUND

The following facts appear from the record. Ms. Mattox graduated from law school in 1967 and was admitted to practice in the state of Kentucky. Between 1967 and 1970 she practiced law in Kentucky, primarily in the areas of real estate, corporations, and state court litigation. She taught briefly at Pepperdine University Law School, and subsequently has practiced in other jurisdictions, including Colorado and Nevada. Beginning in April 1987, and until her suspension in August 1991, Ms. Mattox was actively engaged in the practice of law before this court. She currently does consulting for a company engaged in dispute resolution, but wishes to return to the practice of law before this court. The balance of the facts relating to Ms. Mattox's disciplinary history divide more neatly by jurisdiction.

*Kentucky*

Petitioner, then Judith Ward Smith, was admitted to practice in Kentucky in 1967. In 1970, she was charged with the commission of three felonies: (1) obtaining money from a client under false pretenses; (2) forgery; and, (3) removing documents from an official file. Ms. Mattox entered into a guilty plea to the misdemeanor charge of attempting to commit a felony, the felony charges were dismissed, and she was sentenced to 12 months in county jail. She served her sentence on probation in lieu of incarceration. The State of Kentucky Bar Association commenced a disciplinary proceeding against Ms. Mattox and recommended a temporary suspension. On Ms. Mattox's appeal of that recommendation, the Court of Appeals of Kentucky, *sua sponte*, imposed the more serious sanction of permanent disbarment. *Kentucky State Bar Association v. Smith*, 492 S.W.2d 880, 882 (Ky.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 109 (1973).

In imposing the disbarment, the Court of Appeals of Kentucky found the following facts. Ms. Mattox had agreed to represent Sally Fugate, the mother of Everett Fugate, who died intestate. Ms. Fugate wished to acquire a house that had belonged to the deceased. What purported to be a judicial deed was filed in the local Clerk's office and Ms. Fugate paid $632.72 to petitioner for legal services. The deed, however, was later removed from the Clerk's files. It was discovered that, although a court proceeding had been initiated by Ms. Mattox to settle the estate, virtually nothing had been done to advance the proceeding, the circuit judge's signature on the deed was a forgery, and the removal of the deed was unauthorized. Ms. Mattox denied any culpability in the matter, and suggested that her dying husband may have been responsible. The court, based upon the testimony of handwriting experts and eyewitnesses, rejected these denials, finding that Ms. Mattox had perjured herself.

*Colorado*

In January 1970, shortly before her indictment in Kentucky, Ms. Mattox applied to

---

1. Without objection by petitioner, the court entered into the record certain public documents concerning Ms. Mattox's prior bar admissions and disciplines.

take the Colorado bar examination. Her application, which stated she had never been arrested, charged with, or convicted of a crime, was accurate at that time. In February, 1970, after her indictment, she took the Colorado bar exam. Even though Ms. Mattox passed the exam, she did not present herself to be sworn until December, 1973, some ten months after her disbarment in Kentucky. Ms. Mattox failed to notify the Colorado state bar officials of her misdemeanor plea or her Kentucky disbarment prior to the administration of the oath. Those facts, nevertheless, came to light, and disciplinary proceedings were commenced. Ms. Mattox claimed that prior to being sworn she had written a letter to the Clerk of the Colorado Supreme Court laying out the facts of her disbarment in Kentucky. Neither the Grievance Committee nor the Supreme Court of Colorado, which decided the matter on appeal, believed her. *People v. Mattox*, 639 P.2d 397, 398 (Colo.1982) (en banc). The court held that Ms. Mattox owed a continuing duty to correct her initial representations on her bar application and that her failure to do so was not accidental. *Id.* at 399. The Court concluded that her actions "constituted conduct involving fraud, deceit, and misrepresentation prejudicial to the administration of justice." *Id.* (citing Disciplinary Rules 1–101(A), 1–102(A)(4) and (5)). She was suspended from the practice of law in Colorado for one year.

Based on the state supreme court suspension, the United States District Court for the District of Colorado effected a reciprocal suspension commencing in 1982 and continuing for an indefinite period. When the state suspension ended and Mattox was readmitted to practice in Colorado, she applied for readmission to the district court. The court denied the application, finding that "her explanations of questionable conduct even when under oath amount at best to an insouciant disregard for accuracy and consistency." *In re Mattox*, 567 F.Supp. 415, 417 (D.Colo. 1983), *rev'd on other grounds*, 758 F.2d 1362 (10th Cir.1985). This decision was reversed for procedural deficiencies and remanded. *In re Mattox*, 758 F.2d 1362. On remand, the district court ordered a psychiatric evaluation, which was performed by Dr. John Glismann. He reported no psychiatric diagnosis, but he believed her protestations of innocence in the Kentucky and Colorado matters. *In re Mattox*, No. 82–DP–4 (D.Colo. Aug. 25, 1987), at 2, *aff'd*, 862 F.2d 876 (10th Cir.1988). The court, nevertheless, chose not to accept Dr. Glismann's assessment of her credibility or likelihood for rehabilitation, and found that Mattox's repeated statements that she had sent the letter to the Clerk of the Colorado Supreme Court were false and compounded the earlier misconduct. *Id.* at 1–2. It denied the application for reinstatement, concluding that the "applicant's lack of candor and repeated misstatements of facts warrant our decision to deny her readmission." *Id.* at 2. This decision was affirmed, *In re Mattox*, 862 F.2d 876, and Ms. Mattox remains under suspension in the district court.

*Nevada*

In 1988, Ms. Mattox submitted, and was granted, a verified petition to appear *pro hac vice* in the District Court of Nevada. As part of that petition, she stated under oath that, since December 3, 1973, "she has been and presently is a member in good standing of the bar of the highest Court of the State of Colorado, where she regularly practices law.... [and] [t]hat no disbarment proceedings ... have ... ever been instituted against [her]...." *Burke & Associates, Inc. v. EG & G Energy Measurements, Inc.*, CV–S–87–722–HDM (RJJ) (D.Nev. May 4, 1990) (Report & Recommendations of United States Magistrate), at 2. When contrary facts came to light, a show cause order was initiated, and the Magistrate held a hearing. Mattox attempted to explain the apparently false statement by testifying that she had asked a paralegal to complete the relevant forms, that he had innocently proposed the misstatement, and she had signed it without thought. The Magistrate rejected this defense, found the false statement had been made knowingly, and recommended an indefinite suspension. *Id.* at 7. The district court accepted the findings of the Magistrate and imposed a one year suspension. *Burke & Associates, Inc.*, CV–S–87–722–HDM (RJJ) (D.Nev. Oct. 12, 1990) (Judith Ward Mattox, Respondent), at 2–3, *aff'd sub nom., Mattox*

*v. United States District Court, District of Nevada*, 956 F.2d 1167 (9th Cir.1992). Mattox has not applied for readmission in Nevada.

### Colorado Revisited

The State of Colorado initiated reciprocal disciplinary proceedings against Ms. Mattox based on the Nevada District Court suspension. She was suspended for one year, beginning December 15, 1993. *People v. Mattox*, 862 P.2d 276 (Colo.1993). Upon the expiration of the suspension period, her license to practice in the State of Colorado was reinstated. Colorado is the only state jurisdiction in which Ms. Mattox is currently admitted to practice law.

### The Court of Federal Claims and The Federal Circuit

Ms. Mattox was admitted to practice before this court on April 30, 1987. During the hearing on the present matter, Ms. Mattox acknowledged that she had "an affirmative obligation to advise this court [of her prior disciplinary problems]." She states that she disclosed them to the attorney who moved for her admission. Neither she, nor her sponsor, however, saw fit to inform the clerk or the court.

In August, 1991, after being notified by the Nevada District Court of petitioner's suspension in its jurisdiction, as well as her prior suspensions in Colorado and Kentucky, this court issued an order directing Ms. Mattox to show cause why she should not be suspended for one year pursuant to Rule II(C).[2] After considering her response, Chief Judge Smith ordered Ms. Mattox suspended from the practice of law before this court for a period of one year. *In re Mattox*, No. 22 (Cl.Ct. May 7, 1992). The suspension was to continue until successful application for readmission.

On May 11, 1987, Ms. Mattox was admitted to practice before the Federal Circuit. No disciplinary actions have been commenced in that forum and she remains a member of the bar of that court.

### Proceedings on Petitioner's Motion for Readmission in this Court

After receipt of her motion, and prior to the hearing, this court directed petitioner to respond to certain written questions. One of them asked, "To which jurisdictions has petitioner applied for admission or readmission (other than the state courts of Colorado and Kentucky and the district courts of Nevada and Colorado)?" In relevant part, her written answer was, "Petitioner applied for Admission to the United States District Court of West Virginia in 1992, which was granted." The Clerk of the Court attempted to verify this information with both district courts in West Virginia. Upon being notified that Mattox had never applied for admission in those jurisdictions, this court entered a show cause order directing petitioner to explain the apparent discrepancy. She responded that she had been admitted in the United States District Court for the Southern District of West Virginia *pro hac vice* in a particular case. She stated:

> I understood the Court's inquiry requiring my response to advise it of any Court ... in which I had been permitted to practice. Accordingly, I furnished the response regarding this case in West Virginia.[3]

A hearing was held on March 29, 1996, at which petitioner appeared *pro se*. Without objection, the relevant decisions of the various jurisdictions, which are set out above, were made part of the record by the court. In addition, Ms. Mattox submitted current affidavits from two attorneys familiar with her character and ability. They testify to her good professional and moral character. At the hearing, Mattox also asked for an opportunity to submit two other supporting documents. The first is an affidavit, dated February 3, 1981, by Judge Patricia A. Clark, a Bankruptcy Judge in the District of Colorado. Judge Clark had prepared the affidavit in connection with the first Colorado state disciplinary proceeding. The second document is Dr. John Glismann's report to

---

2. Rule II(C) requires that an attorney admitted to practice before this court, and disciplined by another court, shall show cause why discipline in this court would be unwarranted. RCFC, Appendix F, Rule II(C).

3. Local rules for the Southern District of West Virginia do not specifically require a moving attorney to state prior disciplinary actions.

the District Court of Colorado, dated December 20, 1985.

## DISCUSSION

Petitioner has the burden under the rules of this court to demonstrate by clear and convincing evidence that she has the "moral qualifications, competency and learning in the law required for admission to practice law before the court and that the petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest." Rule VI(C). In order to guide its practice, this court has adopted, and follows, the American Bar Association Model Rules of Professional Conduct ("Model Rules"). Rule III(B). The rule most relevant to the present circumstances is Rule 3.3, "Candor Toward the Tribunal." The first element of the rule is that a lawyer will not knowingly "make a false statement of material fact or law to a tribunal." Model Rule 3.3(a)(1).

■ This standard reflects the truism that it is essential that members of the bar be trustworthy and that their statements be completely reliable. Public confidence in the integrity of both the bench and the bar requires no less. That confidence, in turn, is essential to the continued vitality of the legal system, as well as to the maintenance of an independent bar. As Justice Frankfurter has stated:

> It is a fair characterization of the lawyer's responsibility in our society that he stands 'as a shield' ... in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of strictest observance of fiduciary responsibility, that have, throughout the centuries been compendiously described as 'moral character.'

*Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 247, 77 S.Ct. 752, 761, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring) (citations omitted). A lawyer's first

contact with any court is through the admissions process. It follows that the court's concern in maintaining high standards starts with requiring an attorney who seeks admission to the court to be completely candid in the application process.

■ Practice before this court is solely for the purpose of litigation, and it is not essential for the practice of law. Ms. Mattox's right to earn a livelihood as an attorney depends in the first instance on admission to a state bar. For that reason, it is well-settled that federal courts, which are courts of limited jurisdiction, reserve the power to enforce vigorously standards of practice and procedure independently of decisions made by state courts. *Petition of Olkon,* 605 F.Supp. 784, 791 (D.Minn.1985) ("Although we acknowledge the importance of similar treatment in the state and federal courts, we must also recognize that federal courts have an independent power to discipline attorneys who have been admitted to practice before the federal bench.") (citing *In re Ruffalo,* 390 U.S. 544, 547, 88 S.Ct. 1222, 1224, 20 L.Ed.2d 117 (1968); *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957)), *aff'd and remanded,* 795 F.2d 1379 (8th Cir.1986).[4] *See also Matter of Abrams,* 521 F.2d 1094, 1099 (3d Cir.), *cert. denied,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975); *Carver v. Clephane,* 137 F.2d 685, 686 (D.C.Cir.1943).

■ The reasons for this court to be discerning are particularly acute considering the pressures of the specialized and demanding practice before it, the typically high volume of materials utilized, and the fact that judgments, often very large, are satisfied out of the public treasury. The court must be satisfied that it can place great trust in the attorneys appearing before it. The fact of petitioner's reinstatement to practice in the Colorado state courts does not, therefore, preclude this court's separate examination of her qualifications.

■ The grounds for Ms. Mattox's prior disciplines are set out above. It is unneces-

---

4. The Supreme Court, in *Theard,* stated, "The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom ... lawyers are included." 354 U.S. at 281, 77 S.Ct. at 1276.

sary to repeat them, but it is not unfair to summarize them as demonstrating her consistent willingness to lie under oath to judicial tribunals and their representatives. The real question is whether petitioner's conduct since the last non-reciprocal discipline was initiated constitutes persuasive evidence of a fixed determination on her part to alter her misbehavior. When an applicant has been previously suspended for unethical behavior, the court must be satisfied that she "has undergone such a moral change as to now render [her] a fit person to enjoy the public confidence and trust once forfeited." *Petition of Olkon*, 605 F.Supp. at 787. *See also id.* at 788 ("reinstatement must be warranted by stronger proof of good moral character and trustworthiness than that required in an original admission to the bar."). The evidence in this respect is not persuasive and in fact demonstrates a willingness by Ms. Mattox to cut less than sharp corners in representations to the court.

From her testimony at the hearing, it is not entirely clear to the court whether Ms. Mattox acknowledges the gravity of the character lapses with which she has been assessed. As to the most serious violations, those in Kentucky, she acknowledged before this court that some of the allegations "were true and some were not." This representation is not entirely consistent with the Findings of Fact and Recommendation of the Hearing Board to the Supreme Court of Colorado. In its report, the Board states that "[Ms. Mattox] asserts that the allegations against her were untrue." When asked about the apparent difference between that statement and her statement to this court, petitioner stated that the Board was in error; and that she had only contended that she had been denied due process in Kentucky. In fact, her current position is that the allegations relating to the endorsement and taking of a check were untrue; despite the fact that the Kentucky Supreme Court found that "[Mattox's] signature appears on the back of th[e] check indicating that she endorsed it when it was cashed." 492 S.W.2d at 881.

In her statement to this court, Ms. Mattox characterized the Colorado Hearing Board as agreeing with her that "[her] constitutional rights had been violated." The court has carefully read the Board's report and concludes that petitioner's characterization of this report is an exaggeration. The Board recited the factual grounds for the argument that Ms. Mattox was denied due process but it did not adopt her contentions.

Ms. Mattox's response to this court's inquiry regarding admissions to other jurisdictions also provides this court with cause for concern. It should have been apparent either that a *pro hac vice* appearance on a single case does not constitute admission to another "jurisdiction" or that the circumstances required further explanation. The court accepts Ms. Mattox's statement during the hearing that she was not attempting to be deceptive. Her answer was so obviously non-responsive, however, that, along with other inaccuracies at the hearing, it suggests Ms. Mattox has difficulty in objectively testing the accuracy of her formal representations to the court.

 Along with her application for reinstatement Ms. Mattox submitted affidavits from two attorneys practicing before this court. These individuals stated that they had worked with Ms. Mattox in the past, and knew her to be of the requisite personal and professional integrity in order to practice as a member of this court's bar. These statements would be sufficient for an individual with no prior disciplinary record. In view of her serious prior problems, however, the evidence in support of Ms. Mattox's petition for readmission must be compelling. As the court previously stated, reinstatement requires stronger proof of good moral character and trustworthiness than is ordinarily required for an initial admission. In light of the inconsistencies and shortcomings throughout Ms. Mattox's argument, these affidavits are insufficient to support readmission to the bar of this court.

At the hearing petitioner offered two additional documents, in support of her motion, for the record: the 1981 affidavit of Judge Clark, and the 1985 psychiatric report of Dr. Glismann. The court finds neither to be probative with respect to the question of her candor. In Judge Clark's 1981 affidavit, she recites that Mattox is candid and ethical.

Judge Clark states that she had "regular and frequent opportunity" to observe the petitioner in connection with a particular bankruptcy proceeding. The affidavit's predictive value is questionable, however, in that it preceded Ms. Mattox's misrepresentations in Nevada.

Dr. Glismann evaluated Ms. Mattox on two occasions for a total of three hours and fifteen minutes. He also had available the file from the Colorado District Court proceeding, as well as the results of a standardized written personality examination. Based on this information, he found no evidence of a personality disorder. Dr. Glismann concluded that Ms. Mattox is "clearly not psychopathic," and stated that he believed that "she would not engage in this illegal behavior," referring to the original Kentucky incident. He opined, presumably as a psychiatrist, that the "plea bargain recommended by her attorney was ill advised." Despite the fact that he believed she did not engage in the most serious violations found by the Grievance Committee and the Court of Appeals of Kentucky, he felt that although there "may have been significant elements of anxiety in terms of being unable to deal vigorously with these unpleasant issues, ... Ms. Mattox is now quite clear as to what should have been the appropriate course of action, and she does not excuse herself." It is not clear what Ms. Mattox had to excuse herself from, however, in view of the fact that Dr. Glismann accepted her explanation of events in Kentucky. Overall, Ms. Mattox impressed Dr. Glismann "as an honorable person and a credit to her profession." The court does not find that the psychiatrist's assessment is entitled to any weight. His conclusions are unsupported, or beyond his expertise, and reflect an optimism not borne out by subsequent events.

In sum, Ms. Mattox has not overcome the court's concern that one who "repeatedly prevaricates or equivocates in legal documents is not qualified to be a member of the bar, for a lawyer whose word cannot be relied upon is a menace to clients, the courts, and the public." *Carver v. Clephane*, 137 F.2d at 686. The early predictions of both Judge Clark and Dr. Glismann were proven premature by Ms. Mattox's subsequent actions, and the two affidavits submitted on her behalf are, standing alone, inadequate. As Justice Cardozo stated, while on the New York Court of Appeals, "Membership in the bar is a privilege burdened with conditions." *Matter of Rouss*, 221 N.Y. 81, 116 N.E. 782, 783 (1917), *cert. denied*, 246 U.S. 661, 38 S.Ct. 332, 62 L.Ed. 927 (1918). Petitioner has not yet shown that she can abide by those conditions.

## CONCLUSION

Ms. Mattox has failed to carry the burden of proving by clear and convincing evidence that she has the moral qualifications, competency and learning in the law required for admission to practice before this court. Ms. Mattox's petition for reinstatement is therefore denied. This denial is without prejudice, however, to resubmission no sooner than one year from the date of this order.